ABEL NASON *vs.* MAURICE WEST and another.

York. Opinion May 17, 1886.

*Master and servant. Negligence. Presumption. Evidence.*

The plaintiff was employed by the defendants to remove the sand, or "form" from a large oven which had been recently built by workmen employed by the defendants' lessor. After having taken it nearly all out by means of shovels and other tools furnished him by another servant in the employ-ment of the defendants, the plaintiff crawled into the oven for the purpose of cleaning out the corners, and while in there the oven fell in upon him, burying him in brick, sand and mortar, and causing the injuries for which this suit is brought. There was no evidence that the defendants had any knowledge of the dangerous condition of the oven at the time the plaintiff

met with the accident, or that they were negligent in not knowing it. *Held*, that the verdict in favor of the plaintiff could not be sustained.

In order to entitle the plaintiff to recover, it must be shown that the defendants knew, or ought to have known, of the dangerous condition of the oven, and that the plaintiff did not know, or could not reasonably be held to have known of the defect which led to the injury.

The mere fact that the plaintiff may have sustained an injury while in the employment of the defendants, or upon their premises, raises no presumption of wrong on their part, and is not sufficient upon which to found a verdict.

Negligence being the basis of the plaintiff's action, it must be proved by evidence having legal weight, and upon which the verdict of a jury would be allowed to stand.

A mere scintilla of evidence is not sufficient.

ON motion to set aside the verdict.

An action to recover damages for personal injuries received by the plaintiff while in the employ of the defendants. The facts are stated in the opinion. The verdict was for the plaintiff in the sum of two hundred and forty-five dollars and the defendants moved to set it aside as against evidence.

*Hamilton and Haley*, for the plaintiff.

An employer is under an implied contract with his servant to furnish suitable means and instruments for carrying on the business and a suitable place that the servant may not be exposed to unnecessary risk. 8 Allen, 446; 110 Mass. 260; 102 Mass. 583; 66 Maine, 423; 48 Maine, 113; 10 Gray, 281.

The servant assumes the risk incident to the work, including the carelessness of his fellow-servants, and the master a safe place in which to perform the work and improved and safe machinery. The servant takes the risk of the use of the machinery and not of its construction. The master is held to know of any defect in the construction. 25 N. Y. 572; 1 Hilliard Am. Law, 83; 8 N. Y. 175; 66 Maine, 423.

When the accident is such, in the ordinary use of the thing and in the usual course of events, does not happen if those who had the management had used proper care, it is *prima facie* evidence of negligence. Bigelow Lead. Cas. on Torts, 597; Greenl. Ev. § 230; *Stevens* v. *E. and N. A. R. R.* 66 Maine, 74.

Inattention or want of care, if occasioned by the nature of the

employment, is no hinderance to a recovery when the injury is legally imputable to a defect. *Snow* v. *Housatonic R. R. Co.* 8 Allen, 441; *Spofford* v. *Harlow*, 3 Allen, 176; *Johnson* v. *Hudson R. R. Co.* 20 N. Y. 65; *McIntosh* v. *N. Y. Cent. R. R. Co.* 37 N. Y. 287; *Quirk* v. *Holt*, 99 Mass. 164; *Butterfield* v. *Weston R. R. Co.* 10 Allen, 532; see also Sherman and Redfield, Negligence, § 504.

*H. Fairfield*, for the defendant.

It must be proved that the injury was caused by the fault of the defendants. *Dickey* v. *Maine Tel. Co.* 43 Maine, 492; Sherman and Redf. Neg. § 12.

The defendants are not liable because they were tenants. Taylor, Land. & Ten. §§ 175, 119, 120; Wood, Nuisances, §§ 141, 142; *Coe* v. *Harahan*, 8 Gray, 198; *Larue* v. *Hotel Co.* 116 Mass. 68.

If an accident, defendants are not liable. *Osborne* v. *Knox and Lincoln R. R. Co.* 68 Maine, 50. See also Sherm. & Redf. Neg. § 6.

Foster, J. The defendants are lessees of a baker's shop at Old Orchard. In the rear of the building and near to it was the oven, first built by the lessor in the summer of 1883, in accordance with the stipulations in the lease from him to these defendants. This oven having been in use during that season, and owing to the high degree of heat necessary to its successful operation, some of the brick around the fire-box had melted, rendering it necessary to rebuild it. Accordingly the next summer the lessor, having his attention called to it, caused the oven to be rebuilt, employing a mason of many years experience, the same man who had constructed it the year previous. In the formation of the arch or roof of the oven, the bricks were laid over a " form, " composed of damp compacted sand. A few days after the oven was completed, the defendants being ready to commence that season's business, engaged the plaintiff to go to Old Orchard with one of their workmen by the name of Roaks, to remove the sand from the oven. After having taken it nearly all out by means of shovels and other tools furnished him by

Roaks, he crawled into the oven for the purpose of cleaning out the corners. While in there the oven fell in upon him, burying him in brick, sand and mortar, and from which situation he was rescued a few minutes later, having received some slight injuries, and for which this action is brought.

The principles relating to the liability of the master for injuries received by the servant in the course of his employment are well defined, and have been frequently stated in judicial decisions. It only becomes necessary to make a proper application of them here, and by those well settled principles determine whether the verdict of the jury should be sustained.

The action set forth in the plaintiff's writ is founded on a charge of negligence. It is the gist of the action, and being alleged it must be proved. The mere fact that the plaintiff may have sustained an injury while in the employment of the defendants, or upon their premises, raises no presumption of wrong on their part, and is not sufficient upon which to found a verdict. Negligence on the part of the defendants being the basis upon which the plaintiff founds his action, it is to be proved. Presumption of negligence from the fact alone that an accident has happened will not do ; for if there is any presumption in such a case it is that the defendants have complied with those obligations which rest upon them equally with other men.

There are cases, to be sure, like those against depositaries, inn-keepers and common carriers, where property is lost which is confided to them, or where the nature of the accident or attending circumstances is such that negligence may be presumed from the act. But in the ordinary class of cases, of which the one before us forms no exception, the burden lies upon the plaintiff to prove the negligence which he alleges.

And while it is true that this may be done by proof of facts from which it may reasonably be inferred that the defendants' negligence caused the injury complained of, it is equally true that a mere scintilla of evidence is not sufficient. It must be evidence having legal weight, and upon which the verdict of a jury would be allowed to stand. *Connor* v. *Giles*, 76 Maine, 134; *Beaulieu* v. *Portland Co.* 48 Maine, 296; *Cornman* v.

*Railway Co.* 4 Hurl. & Nor. 784; *Toomey* v. *Railway Co.* 3 C. B. (N. S.) 149; *Cotton* v. *Wood*, 8 C. B. (N. S.) 568.

And in order for the plaintiff to be entitled to recover in this action it must be shown that the defendants owed some duty to him and that there was a neglect of that duty. If the plaintiff received an injury as the result of an accident solely, and the defendants were without fault, the action is not maintainable. Ever since the decision in the case of *Priestely* v. *Fowler*, 3 Mees. & Wels. 1, in the English court of Exchequer, it has been held that the mere fact of relationship of master to servant, without a neglect of duty, does not impose upon the master a guarantee of the servant's safety.

The plaintiff, however, alleges that there was such neglect on the part of the defendants in not notifying him of what he claims to be the insufficient and dangerous construction of the oven, of which the defendants were aware, but of which the plaintiff was ignorant; and his claim is that he was employed by the defendants to enter this oven which was so defectively constructed that it fell upon and injured him.

Before the plaintiff could be entitled to a recovery upon the allegations set up in his writ, it must be shown that the defendants knew or ought to have known, of the dangerous condition of the oven, and that the plaintiff did not know, or could not reasonably be held to have known of the defect, if such it was, which led to the injury. Knowledge on the part of the defendants, or such lack of it as would render them culpably liable, and ignorance on the part of the plaintiff, of the alleged danger or defect, are essential prerequisites to the maintenance of this action. Beach on Contrib. Neg. § 123. Sherm. & Red. on Neg. § 99.

Thus, in the recent case of *Griffiths* v. *London & St. Katharine Docks Co.* 12 Q. B. Div. 495, afterwards affirmed in the High Court of Appeal, 13 Q. B. Div. 259, the plaintiff at the time of the accident was in the employment of the defendant company when one of the large iron doors upon the defendant's premises where the plaintiff was at work suddenly gave way and fell upon the plaintiff; the court there say: "If the master employs a

servant to do work for him, not knowing of any special or latent danger in the work, the servant takes the consequence of any danger there may be in it. The master does not mislead the servant, but only avails himself of his voluntary service. On the other hand, if the master knows of danger which the servant does not, it is clearly the duty of the master to communicate his knowledge of the danger to the servant. If the master requires the servant to do something out of the ordinary course of his employment and dangerous, the servant may disobey him. It is clearly the duty of the master to communicate a danger which he knows and which the servant does not. It is necessary to allege that the servant does not know of the danger, because if the servant knows of the danger and does the act which may and does cause injury to him, he has nothing to complain of, and cannot bring an action for the damage sustained." From the numerous decisions sustaining the doctrine above laid down, we select a few of the most important ones in different courts. *Welfare* v. *Brighton Railway Co.* L. R. 4 Q. B. 696; *Priestely* v. *Fowler*, 3 M. & W. 1; *Indianapolis Railroad Co.* v. *Love*, 10 Ind. 554; *Wright* v. *New York Central R. R. Co.* 25 N. Y. 566; *Hayden* v. *Smithville M'f'g Co.* 29 Conn. 548; *Buzzell* v. *Laconia M'f'g Co.* 48 Maine, 113; *Hull* v. *Hall*, 78 Maine, 114.

In the case of *Indianapolis Railroad Co.* v. *Love*, 10 Ind. 554, the court held that the corporation was liable in allowing an employee to pass over a defective bridge, known to the corporation, and not known to the servant. If the company knows, or both the company and servant know, the company is not liable unless it gives special directions, remarks the court in that case.

It was said in *Wheeler* v. *Wason M'f'g Co.* 135 Mass. 298, that where the servant is as well acquainted as the master with the dangerous nature of the service in which he is engaged, he can not recover. And the early case of *Priestely* v. *Fowler*, 3 M. & W. 1, was where an action was brought by a servant against the master for injuries received in consequence of the breaking down of an overloaded van, and it was held that the master was not liable, because the fact that the van was overloaded was as well known to the servant as to the master.

So in *Welfare* v. *Brighton Railway Co.*, L. R. 4 Q. B. 696, COCKBURN, C. J., said : " In order to make out negligence on the part of the company, and make the company liable for allowing that person to go on the roof, the plaintiff must show either that the company knew or had the means of knowing, or were bound to take steps to know, the state in which the roof was. As to that the case is entirely bare of all evidence. It does not at all follow that because the roof of a building may require repairing, and a workman is directed to go on it to repair it, the person giving the direction knows that the roof is in such a state that if the workman steps upon it, it may give way under him."

Applying the foregoing principles to the case at bar, with all the evidence before us, we are satisfied that the verdict can not stand. There is no evidence upon which a jury could properly find that the defendants knew of any dangerous condition of the oven at the time the plaintiff met with the accident. If the construction was defective, there is no evidence that the defendants knew of it, or that it was of such a character that the lack of knowledge was culpable.

The oven had been recently rebuilt by the party who leased the premises to the defendants. The defendants neither employed nor paid the party who built it, nor was it built under their inspection or superintendence. The cause of the falling in of the oven seems to be shrouded in a mystery which neither the evidence nor the counsel upon either side is able to explain, and it is left uncertain whether it fell from any inherent defect, or from some act of the plaintiff, as a moving cause, while at work within it.

Nor do we think that the fact of the oven having been cracked and some of the bricks around the fire-box having melted the previous summer, renders the defendants chargeable with knowledge of any defect or dangerous condition of the oven in which the accident happened. This was a new oven. The defect existing the year before was no longer in existence. It was not in fact the same oven that was there the year before. As well might it be said that a town should be held to have knowledge of

:a defect in a way, that existed the year before, when the way the next year and before the accident had been entirely rebuilt.

What greater knowledge of the condition of this oven could the defendants have had than the plaintiff himself? They had no greater opportunity for examining the inside of it than the plaintiff; it was completely filled with sand, placed there when it was constructed, and the plaintiff's employment was to remove it. What examination would have revealed the fact that the arch would fall after the sand was removed, except by such removal?

If the plaintiff had equal knowledge with the defendants before he commenced the work, then he must be considered as assuming the risk, and consequently the defendants would not be liable. *Beaulieu* v. *Portland Co.* 48 Maine, 296; *Shanny* v. *Androscoggin Mills*, 66 Maine, 428.

*Motion sustained and verdict set aside.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.