BERNSTEIN *vs.* CARMICHAEL

MAERY PRO AMI *vs.* CARMICHAEL

Cumberland.   Opinion, July 30, 1951

*Charles A. Pomeroy,*

*Wilfred A. Hay,* for plaintiffs.

*Robinson, Richardson & Leddy,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.   These two actions, tried together in the Superior Court, are brought forward for review on exceptions to the direction of verdicts for the defendant.   The issue thus raised must be resolved, as the plaintiffs assert, by viewing all the evidence in the record in the light most favorable to them, *Lewiston Trust Co.* v. *Deveno,* 145 Me. 224, 74 A. (2nd) 457, and cases cited therein, with full rec-

ognition that a jury, when a case is submitted to it, is entitled to draw all inferences that are reasonable and proper from such evidence. That they are limited to such inferences is undoubted. See the cases cited *infra*.

The plaintiffs are a minor, suing by his next friend, to recover for injuries alleged to have been sustained when he was struck by a motor vehicle operated by the defendant, as he was crossing a public highway, and his mother, seeking reimbursement for medical and hospital expenses occasioned thereby.

The minor was six years old when injured. That his injuries were serious cannot be doubted. He was found unconscious under the running-board of an automobile parked at the curb, which the defendant had passed, stopping within a few feet thereof, just before he was found. It is probable that the child would have no recollection of the circumstances. Whether or not he would, he did not testify, nor was any witness presented who saw him crossing, or attempting to cross, the road, or when he was struck.

The highway on which the plaintiff was traveling crosses Deering Oaks, a public park in Portland, where the minor and many other children were playing, in broad daylight, just prior to his injury. He had been taken there by his grandfather and grandmother, in an automobile they had parked against the curb on the opposite side of the road, which was thirty feet wide and had cars parked on both sides at the time, spaced quite close together. A space about eighteen or twenty feet wide, according to the testimony of the grandfather, was left to accommodate travel. A stipulation made in the case is that the "prima facie legal speed limit" in the Park is twenty miles per hour (for motor vehicles).

The claim of the plaintiffs is grounded on evidence indicating that defendant's car passed the spot where the minor

was found injured, just prior to his being found, an estimate of the grandfather that the speed thereof, when first seen approaching the parked cars, was between thirty and thirty-five miles per hour, and defendant's statement, after the child was found, that she was awfully sorry but she did not see him. The grandfather testified that the defendant was traveling in the center of the road, slightly to the left of the center line, that a hat the child was wearing was found, and that the defendant's car stopped, at the left thereof, the car being about thirty-five feet beyond the hat. He made two different statements about the location of the hat, with reference to his own car, but the one more favorable to the plaintiffs would not indicate that the defendant's car travelled more than forty-seven feet, after the child was struck, if he was struck where the hat was found, and there is no evidence to that fact.

Both grandparents testified to hearing two thumps and a squeaking, or screeching, of brakes. The grandmother described it as "an awful screeching." There is no suggestion in the case, however, that the tires of defendant's car left any skid marks on the road. The only possible grounds on which the defendant could have been found guilty of negligence are violation of a speed law and failure to see the child when she should have seen him. The second ground is meaningless in the absence of evidence that he was in the highway, where he could have been seen, as she approached, and there is no such evidence.

The grandparents testified that the child was playing in the grass, alongside their own automobile, until a matter of seconds before whatever happened did happen. This can hardly be true in view of the fact that he was found under the running-board of a vehicle parked on the side of the street opposite their car immediately after the defendant passed. The inference seems unavoidable that he had crossed the highway, and was returning. He had been play-

ing about twenty minutes with a home-made bow and arrow, shooting the arrow on a line roughly parallel with the road, in the grass alongside the grandparents' car, while they watched him. When they took their eyes off him, and what he did while they were not observing, are unknown. Whether he shot an arrow across the road, intentionally or by mistake, ran across to retrieve it, and was attempting to return, cannot be known. When the hat fell off his head, and why, are matters for surmise, or speculation. Again there is a strong inference that it may have fallen off as he was crossing the road, headed away from his grandparents. It is almost certain it could not have been knocked off by his being struck by defendant's car.

The plaintiffs rely on the well-established principle that the violation of a law of the road, in the operation of a motor vehicle, constitutes *prima facie* evidence of negligence, and the testimony of the grandfather that when he first saw the defendant's car approaching, it was traveling at a speed of from thirty to thirty-five miles per hour. The principle is well stated in *Nadeau* v. *Perkins,* 135 Me. 215, 193 A. 877, where earlier authorities to the same effect are stated. Reliance on it involves the assumption that a jury would be justified in finding that the defendant was proceeding at a speed in excess of the speed limit while passing through the lane between the two lines of cars parked at opposite curbs of the highway. The testimony shows that the car of the grandparents was the one nearest to the point where the defendant entered the park, on the side of the highway on which it was parked, and that the distance from it to the point of entry was about two hundred yards. The grandfather did not state where the defendant's car was when he saw it, which might have been two hundred yards away. He did not claim that he had watched its progress, or that it had not slowed down when it reached his car. It cannot be said that there is more than a scintilla of evidence that the defendant was exceeding the speed limit

when that point was reached. That a scintilla of evidence will not support a verdict was long since declared in this court, in decisions still of authoritative force. *Beaulieu* v. *Portland Company,* 48 Me. 291; *Connor* v. *Giles,* 76 Me. 132; *Nason* v. *West,* 78 Me. 253, 3 A. 911.

In *Beaulieu* v. *Portland Company, supra,* this court quoted the then recent English case of *Cornman* v. *E. C. Railway Co.,* Am. Law Register, 1860, Page 176, wherein it was said:

> " 'It is not enough to say there was *some* evidence. A scintilla of evidence, or a mere surmise that there may have been negligence * * * would not justify * * * leaving the case to the jury. There must be evidence on which the jury might reasonably and properly conclude that there was negligence.' "

To the same effect is the statement in *Connor* v. *Giles, supra,* that.

> "The old rule, that a case must go to the jury if there is a scintilla of evidence, has been almost everywhere exploded. * * * The better and improved rule is, not to see whether there is any evidence, a scintilla, or crumb, dust of the scales, but whether there is any upon which a jury can, in any justifiable view, find for the party producing it, upon whom the burden of proof is imposed."

Again, in *Nason* v. *West, supra,* the court said that while negligence may be proved by:

> "facts from which it may reasonably be inferred that the defendants' negligence caused the injury complained of, * * * a mere scintilla of evidence is not sufficient."

The last statement emphasizes the additional principle of law, established equally with that on which the plaintiffs rely, that the burden resting on one seeking to recover for alleged negligence is to prove not only some act of negligence, but that the act proved contributed in some manner

to the damage for which recovery is sought. *Adams* v. *Richardson*, 134 Me. 109, 182 A. 11. As was said in *Mahan* v. *Hines*, 120 Me. 371, 115 A. 132:

> "When it is sought to establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict."

In this case it might have been proper for a jury, if the issue had been submitted to it, to draw an inference that the motor vehicle driven by the defendant struck the minor plaintiff within the limits of the highway. There is nothing in the record, however, which could support an inference that the minor should have been seen by the defendant at a time when she would have been able to stop her car before striking him, if she had been traveling at a proper speed. There is nothing in the record to support a finding that he was struck by any part of her car, if he was struck by it at all. If so, the logical inference is that he was struck by the right hand side thereof, and, perhaps, that his striking was occasioned by his running against it from a place of concealment between parked cars.

It was argued on behalf of the plaintiffs that one driving an automobile along a highway traversing a public park where children are playing, on plots of grass bordering it, as they were at the pertinent time, should proceed so slowly that he can stop within a few feet "if a child drops into his path from a tree." No authority was cited for the assertion, nor do we believe any could be found. Automobiles should be driven at all times with a degree of care commensurate with attending circumstances, but one driving along such a highway as that here involved is under no duty to anticipate children dropping from trees, or running into his path from between motor vehicles parked along the curbs.

In closing, it should be noted that the grandmother testified not only that the defendant stated after the accident

that she was sorry but did not see the child, which might support an inference that he was struck by her car, but that a sister of the defendant, who was riding with her, stated that she did. If the plaintiffs had believed that the sister saw the child at a time, or in a place, which would support the claim that the defendant was negligent in not seeing him, it seems apparent that they would have called her as a witness and used her testimony. As the parties "upon whom the burden of proof" was imposed, to use the closing words of the quotation from *Connor* v. *Giles, supra,* they elected to rest their cases on evidence which failed entirely to place the minor anywhere except on the grass northerly of the highway, prior to the accident, and under the running-board of an automobile parked on the southerly side thereof, after he was hit. Under such circumstances, the decision in the Trial Court, that verdicts in their favor could not be supported on the evidence presented, was not only proper but inevitable.

*Exceptions overruled.*