CHARLOTTE GLAZIER
*vs.*
EDWARD C. TETRAULT

FRED GLAZIER
*vs.*
EDWARD C. TETRAULT

York.  Opinion July 14, 1952.

*Titcomb & Siddall*, for plaintiff.

*Robinson, Richardson & Leddy*, for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.   These two actions were argued together under a single Bill of Exceptions alleging error in the ordering of non-suits. They were instituted by a wife and her husband, seeking to recover damages for very serious injuries suffered by the wife, the expenses of the husband traceable thereto, and his loss of consortium.

The injuries were caused by the impact of a motor vehicle operated by the defendant, which struck the plaintiff, Charlotte Glazier, and knocked her down, as she was crossing a public highway, at a point where there was no cross-walk, according to a plan introduced in evidence as an exhibit, to reach her home, shortly after midnight on a February day. She had stepped from the taxicab in which she had been driven to the place where she started to cross the road a few moments earlier, and did not proceed until the cab had driven away. The street was wide and straight. There was neither snow nor ice on the traveled portion of it, although snow was banked at the side in front of her house, and a path near there provided passage between the road and the sidewalk. There was no traffic, and little illumination. The point of impact was not located definitely but was shown, quite conclusively, to be at or near the middle of the road, approximately in front of the home toward which she was proceeding.

The indefiniteness of the evidence on which the plaintiffs rely is disclosed plainly in recitals of the Bill of Exceptions

relative to the testimony given by their witnesses, the only ones called to the stand. One point of uncertainty is where Mrs. Glazier was found, in the highway, after the event. A witness, who reached the scene before she was picked up, testified that she was lying in the center of the road, nearer the side on which her house was located. Another, the officer who investigated the accident, stated that the defendant said he struck her with his right front fender. That statement is inconsistent with others made to the same officer at the time, that she was in the middle of the road when he first saw her, that she was startled, took a step backward, and then started (again) to cross.

Another involves the speed at which the defendant was traveling. The officer testified that the defendant said he was proceeding at twenty to twenty-five miles per hour. Mrs. Glazier told the officer the next morning, when he interviewed her at the hospital, that the defendant was traveling at a "good pace," approximately forty to forty-five miles per hour. Other testimony given by her discloses that she did not see the car as it approached her and that she first realized its presence when she heard the screeching of its brakes and a light flashed in her face, which must have been a headlight on the car.

A third relates to marks on the surface of the highway which plaintiffs' counsel argues must have been made by the tires of defendant's car after the brakes were applied. Mr. Glazier testified that he was awakened from a nap by the sound of brakes, and, on going into the highway, could discern drag marks, twenty paces, or sixty feet, in length, which ran parallel to the road and were seven or eight feet out from the sidewalk on the house side. There was no evidence to connect such marks with the defendant's car, which stopped at the side of the road approximately ten feet beyond them.

There was evidence "tending to show," as the Bill of Exceptions states in summarizing the testimony, that Mrs.

Glazier "looked up and down the street two or three times" before starting to cross, after her taxicab departed, but she admitted on cross-examination, as the summarized statement shows, that she did not look after she started to cross, and it was upwards of forty feet from one side to the other. Her rate of progress is not disclosed, but she was walking, and there is nothing in the record to indicate that she was hurrying. The defendant's car, assuming that he was traveling at his own minimum estimate of speed, would cover almost thirty feet per second and must have been more than a hundred feet nearer her path when she reached the middle of the road than it had been at the instant of her starting.

Disregarding for a moment any question of contributory negligence on the part of Mrs. Glazier, counsel for the plaintiff argues that there was ample evidence on which a jury might have found that the defendant was negligent. He relies on her testimony that the defendant was traveling at a "good rate," which she estimated at forty or forty-five miles per hour; the drag marks in the highway, which he asserts might have been found, by a jury, to have been made by the defendant's vehicle; and the claim that if the lights on the defendant's car had been on, he would have been able to see Mrs. Glazier while he was still two hundred feet from the place where she would cross his path. He argues that a jury might have found that the lights on the defendant's car were not lighted, if the evidence of Mrs. Glazier, that she looked up and down the street and saw no car approaching from either direction, was believed, because she could not have missed seeing a car with the lights on. The declaration carries no allegation that the defendant was traveling without lighted headlights, but if it did, there is no evidence to prove the fact. That it cannot be presumed on any such ground will be noted hereafter.

The plaintiffs rely on the principle of law well established in this jurisdiction, that in testing the propriety of an or-

dered non-suit, all the evidence must be viewed most favorably to a plaintiff. *Johnson* v. *New York, New Haven & Hartford Railroad,* 111 Me. 263, 88 A. 988; *Lewiston Trust Co.* v. *Deveno,* 145 Me. 224, 74 A. 2d. 457. It is recognized that a jury is entitled to draw all justifiable inferences from proved facts. *Ross* v. *Russell,* 142 Me. 101, 48 A. 2d. 403; *Wiles* v. *Connor Coal & Wood Co.,* 143 Me. 250, 60 A. 2d. 786. One of the best statements of the rule is that made by Chief Justice Savage in the first of these cases:

> "Upon exceptions to an order of non-suit or of verdict for the defendant, the duty of the court is simply to determine whether, upon the evidence, under the rules of law, the jury could properly have found for the plaintiff. * * * if there was evidence which the jury were warranted in believing, and upon the basis of which honest and fair-minded men might reasonably have decided in favor of the plaintiffs, then the exceptions must be sustained. In such a case it is reversible error to take the issue from the jury."

It is equally well established, however, that when the situation is otherwise, a non-suit should be ordered, or a verdict directed, *Elwell* v. *Hacker,* 86 Me. 416, 30 A. 64; *Hultzen* v. *Witham,* 146 Me. 118, 78 A. 2d. 342, and cases cited therein.

Such is the situation here. There is no evidence in these cases, other than the statement of the injured plaintiff about the defendant's "good pace" (and forty or forty-five mile speed) to establish factually that he was exceeding twenty-five miles per hour. In *Wiles* v. *Connor Coal & Wood Co., supra,* we had occasion to consider the probative value of evidence concerning motor vehicle speed given by one who did not see it until struck by it, and gave our approval to the statement of Chief Justice Rugg in *Koch* v. *Lynch,* 247 Mass. 459, 141 N. E. 677, that such a person:

> "could have had no intelligent thought about * speed."

The record carries a trifle more evidence about the drag marks in the highway than is contained in the recital concerning them in the Bill of Exceptions. That trifle is found in the testimony of Mr. Glazier, after his acknowledgment that he did not know where the marks came from, that they were "fresh." Just how long drag marks made in a highway by vehicles will continue to look "fresh" may be difficult to prove factually, but it is at least apparent that one viewing them cannot give testimony competent to prove that they were made at any particular time.

There are two firmly established principles of law which support the action taken in the Trial Court in these cases. The first is that a mere scintilla of evidence will not support a factual finding. *Connor* v. *Giles,* 76 Me. 132; *Nason* v. *West,* 78 Me. 253, 3 A. 911; *Adams* v. *Richardson,* 134 Me. 109, 182 A. 11; *Bernstein* v. *Carmichael,* 146 Me. 446, 82 A. 2d. 786. As Chief Justice Peters stated it in *Connor* v. *Giles, supra:*

> "a jury cannot be permitted to find there is evidence of a fact when there is not any."

The other is that conjecture is not proof. *Alden* v. *Maine Central Railroad Co.,* 112 Me. 515, 92 A. 651; *Mahan* v. *Hines,* 120 Me. 371, 115 A. 132; *Bernstein* v. *Carmichael, supra.* As was said in *Mahan* v. *Hines, supra,* when a plaintiff seeks to prove his case by inferences "drawn from facts," the facts themselves must be proved.

> "Inferences based on mere conjecture or probabilities"

cannot support a verdict, and when nothing more is presented by a plaintiff, the principle heretofore noted is applicable—a non-suit is in order. The record carries no scintilla of evidence that the headlights on defendant's car were not lighted as he approached the place where Mrs. Glazier was crossing the street. It presents nothing which would

justify even a conjecture that he was driving at excessive speed. Mrs. Glazier was found lying alongside his car and on its left side. The car must have been brought to a full stop at almost the instant she was struck and knocked down.

There is no necessity in these cases to consider the question of negligence on the part of Mrs. Glazier. Many authorities are cited by the plaintiffs wherein it is declared that a pedestrian is not negligent as a matter of law for failing to "stop, look and listen" before crossing a highway. The railroad crossing rule does not apply. The duty is to use due care, and nothing more, but that duty requires that one see what should be seen. In *Milligan* v. *Weare*, 139 Me. 199, 28 A. 2d. 463, this Court set aside a jury verdict rendered, undoubtedly, on the jury's acceptance of the plaintiff's testimony that he looked, saying:

> "Mere looking will not suffice. A pedestrian * * * is bound to see what is obviously to be seen,"

and, also:

> "We are convinced that he either did not look at all * * * or if he did he was so inattentive that he failed to observe the danger which threatened him."

So it must have been in this case. Assuming that Mrs. Glazier looked carefully in both directions before she started to cross the street, as she says, she admits that she did not look again as she made her crossing and entered the farther side thereof, where a car proceeding as the defendant was would normally be traveling. She did not produce evidence which would justify a finding that defendant was negligent. Her own evidence makes it apparent that she did not exercise due care for her own safety.

*Exceptions overruled.*