DEBORAH A. BEAN
PRO AMI RITA BEAN
*vs.*
RAYMOND W. BUTLER
* * * * * *
RICHARD E. BEAN
*vs.*
RAYMOND W. BUTLER

Androscoggin.   Opinion, May 18, 1959.

*Berman & Berman,* for plaintiff.

*John Platz,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J.   On exceptions.   These cases were tried together before a jury at the March Term, A. D. 1958 of the Superior Court for the County of Androscoggin, within and for the State of Maine.   One action sought damages by the

plaintiff, Deborah A. Bean, a minor, for injuries sustained as a result of having been struck by an automobile driven by the defendant, and the other action by Richard E. Bean, father of the minor, seeking consequential damages. At the conclusion of all the testimony, defendant presented motions to the presiding justice for directed verdict in favor of the defendant in both cases. The motions were granted and, to the ruling of the presiding justice in granting the motions, plaintiffs excepted.

The accident took place on High Street, a public street in Auburn, Maine. The defendant was proceeding in the operation of his motor vehicle in a northerly direction on and along High Street. The area is residential. Deborah, the minor plaintiff, was a little girl of 2½ years and lived with her family in a tenement house on the easterly side of High Street, opposite a school playground. At the time of the accident Deborah was in the company of an older sister who was 5 years of age. The two girls were standing between two parked cars on the easterly side of the road. The older sister safely negotiated the distance across High Street from east to west but Deborah in her attempt to do so was struck by defendant's automobile. Counsel for plaintiff in their brief argue question of due care on the part of minor child and of the older child who accompanied her. Defendant's counsel concedes that the jury could properly find plaintiff child was in the exercise of due care in view of her tender age, so there remains no necessity for us to consider this question.

The law is settled in this State that if on the evidence, when taken in its most favorable light for the plaintiff, a jury would be justified in finding for the plaintiff, then the direction of a directed verdict for the defendant is erroneous. The rule is well stated in *Ward* v. *Merrill*, 154 Me. 45, at page 47:

"The issue before us, therefore, is whether or not the ruling of the presiding justice was warranted, bearing in mind that the evidence, with its inferences must be viewed in the light most favorable to the plaintiff."

Much law has been written concerning the responsibilities of a motorist where children are concerned. There are many and varied cricumstances and conditions under which children of tender years are injured by being struck by motor vehicles. Under some circumstances, like those obtaining in *Bernstein* v. *Carmichael,* 146 Me. 446, there is no liability on the part of the driver. The *Bernstein* case concerned a young boy 6 years of age who was found unconscious under the running board of an automobile parked at the curb. The defendant had passed the parked car and stopped within a few feet. Both grandparents who were with the child testified they had heard two thumps and a screeching of the brakes. No witness saw the boy crossing or attempting to cross the road or that the automobile struck him. The court in its opinion, on page 451, said:

"Automobiles should be driven at all times with a degree of care commensurate with attending circumstances, but one driving along such a highway as that here involved is under no duty to anticipate children dropping from trees, or running into his path from between motor vehicles parked along the curbs."

There is a line of cases holding the driver is not responsible for injuries to a child when the child suddenly darts out from behind a parked car into the path of an oncoming automobile under circumstances where the driver is unable to see the child until he is in the path of the car or his presence in the street could not be reasonably foreseen. This type of situation has been termed the "sudden appearance doctrine." Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2A, Sec. 1498:

"Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.

Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him."

Under other circumstances, conditions arise which confront the driver of a car whereby the presence of children creates a responsibility on the part of a motorist to use extreme care and to anticipate that a child might suddenly appear from behind a parked car or other object and into the path of the vehicle. A driver of a motor vehicle, upon observing the presence of a child of tender years near the highway, must alert himself to the possibility that the child may suddenly attempt a crossing of the street and the motorist has the duty to have his car under such control that he can promptly stop it should the child make the attempt to cross. *Hamlin* v. *N. H. Bragg & Sons,* 128 Me. 358. Where a driver of a motor vehicle is aware of the presence of a child or children near or adjacent to the highway or should reasonably be expected to know that children are in the vicinity, he must exercise reasonable and proper care for their safety. This situation is aptly illustrated by school children going to and from school. The characteristics of young children are well known and the likelihood of them,

without thought on their part, running across a highway in the path of oncoming traffic must reasonably be expected, thus requiring of the motorist a complete control of his vehicle to prevent injury to the child. In light of the evidence as developed in this case, what legal duty, if any, did the defendant have toward the minor plaintiff? Was he exercising that due care required of him under all of the circumstances? There is no problem as to speed because no one testified that the defendant was driving his car other than at slow speed. We are not concerned with contributory negligence but only with the question of negligence of the defendant. The defendant testified that he was proceeding along High Street at a slow rate of speed when he saw a little girl in a red coat darting across in front of him when he was approximately 25 feet away from her. He then continued along his way until he was stopped by an oncoming motorist at a point not far distant from where the accident happened. It was then he first knew that he had struck the plaintiff child. He never saw her nor did he notice any unusual motion of his car such as would be expected by the wheels passing over the body of the child. He had no thought that another child might be following the first child although he appreciated the fact that he had passed a school zone sign, was approaching a school zone and that it being a week day school was apt to be in session. He said that at that particular time of the day he thought that the children would be in the school building. This in substance is the defendant's version of the accident. Looking at the plaintiff's side of the case, we find a witness in the person of one Robert G. Tabor who was driving his car along High Street toward the defendant. Mr. Tabor testified that he saw the child in a red coat cross the street in front of his car and that of the defendant and that, "The other little child came out of the yard, I saw it myself, and the right front and right rear wheels went over it. The car kept on

going and I stopped him and asked if he knew he had hit a child."

A police officer of the Auburn Police Department talked with the defendant after the accident and the following is what the officer testified to concerning the conversation between himself and the defendant:

"A. He told me he was proceeding northerly on High St. and that a little girl, two little girls had started to cross the street but one had turned back and the other one had ran across the street, and he applied his brakes, and somebody tooted their horn at him for him to stop. He said he stopped and went back and found he had hit a little girl."

According to the record, a jury could find from the testimony that the defendant was aware of and had notice that two children were in the act of crossing the street, one of them completing the crossing and the other, being the plaintiff, starting to cross but turning back. The defendant in his testimony takes the position he never saw the plaintiff child before striking her although his statement to the officer shows otherwise and this statement, in conjunction with the testimony of Mr. Tabor, would be sufficient to justify a jury finding that the defendant under the circumstances would be reasonably expected to see the child before impact.

The instant case bears some similarity, in its factual aspect, to *Morel, et al. v. Lee*, 33 S. W. (2nd) 1110 (Ark.). In the *Morel* case Mr. Morel and his chauffeur were driving on a public street at a speed of 10 or 15 miles an hour. There were two cars parked on the side of the street. One of the parked cars started into the street whereupon Mr. Morel's chauffeur stopped the car. At this point a boy, 11 years of age, ran from behind the parked cars and across the street. After the boy passed the Morel car it started up

and as it did a child of 3½ or 4 years came from behind the parked cars and was struck by the Morel car. The court said on page 1112:

> "- - - - - he was not driving *it* an excessive rate of speed, he did not see the little boy before striking him, his attention being concentrated on the larger boy, who also came from behind the standing car on the west side of the street, passed in front of his car and on to the east side of the street, fearing lest he might attempt to return and be injured. He knew that people lived along the street, and that children played about and crossed over it, saw the larger boy run across the street in front of his car from west to east, and watched him until he got entirely across, not looking to see whether other children were attempting to follow him across; and the jury could have found that he was negligent in so doing, not exercising reasonable care to avoid injury to the little boy, following the other one, whose presence he should have anticipated."

Reference is made to an annotation in 30 A. L. R. (2nd) beginning on page 9, where a most comprehensive treatment will be found on a motorist's duty to children.

There is some controversial evidence relative to the adequacy of the brakes on the defendant's car. The rule is well established that the question of defective brakes becomes germane only when the defect has causal connection with the injury. See annotation in 170 A. L. R., page 611. According to the record in this case the defendant was not aware of the fact that he had struck the plaintiff child and had no knowledge of it until he was so advised by a witness. There is lacking any connection between the use or non-use of the alleged defective brakes and the injuries sustained by the plaintiff child so this question of the inadequacy of the brakes becomes immaterial.

The defendant's statement as made to the investigating officer establishes that he was aware of the presence of the

plaintiff child and that, she being of tender years, great care and caution should be exercised to avoid injury to her should she suddenly retrace her steps and follow her sister across the street. This and other evidence in the case raises a question for jury determination as to whether or not under all of the circumstances the defendant was in the exercise of due care.

The entry in each case will be,

*Exceptions sustained.*

WEBBER, J. (DISSENTING)

I am unable to agree with the result reached in the opinion. Because I feel that the decision of the court will have far reaching consequences with relation to the duty of motorists to children on sidewalks and in yards adjacent to streets, some explanation of the reasons which prompt a contrary view may be helpful.

Where the evidence is without selective application as between two factual theories, on one of which the defendant is free of any negligence, the jury may not be permitted to conjecture, surmise or speculate as to what may have occurred. *Jordan* v. *Portland Coach Co.*, 150 Me. 149. A mere scintilla of evidence will not suffice to take the case to the jury. *Beaulieu* v. *Portland Co.*, 48 Me. 291, 296. Is there more than a scintilla here? The justice below concluded that there was not and I am satisfied that his ruling was correct. What is the evidence? An alleged admission by the defendant made to a police officer after the accident contains the following:

"(R. 83) * * * two little girls had started to cross the street but one had turned back and the other one had ran (sic) across the street * * *."

But where, we may properly ask, did this turning back take place? On the sidewalk, or in an adjacent yard, or in

the gutter between parked cars, or in the street in front of defendant's car? We are not told. If the plaintiff "turned back," where did she go and how far did she travel away from possible danger? And where was the defendant's car when the turning back occurred with relation to the plaintiff? The evidence is silent. Quite significantly, perhaps, neither of the disinterested eye witnesses presented by the plaintiff observed that either child "turned back." One recalled only that the plaintiff "came out of the yard" while the other had the plaintiff standing concealed from the defendant between two parked cars. Neither gave any testimony suggesting that the defendant was afforded any opportunity whatever in a very brief time sequence to avert the collision.

Two facts are not disputed—that there were cars parked along the side of the street from which the plaintiff emerged, and that the defendant was proceeding very slowly. It is apparently conceded that the only thing the defendant did not do was *to stop his car.* The court must be of the opinion that the defendant had a duty to stop, since there is no other possible basis for a jury finding of negligence. But is the mere presence of children in the area sufficient to raise a duty to stop, or must there be more? If the motorist must stop and wait because children are nearby and may run into the street in front of his car, how long must he remain stopped before proceeding ahead? Or may the operator proceed slowly and with caution as this defendant did? Our court has clearly held that a motorist need not anticipate that children will suddenly and without warning dart from between parked vehicles directly into the path and under the wheels of an automobile. *Bernstein* v. *Carmichael,* 146 Me. 446. Where, as here, the evidence fails to show, either directly or by reasonable inference, either where the plaintiff was or where the defendant was with relation to each other at any given moment

or that the latter had any reasonable opportunity to stop his car and thereby avert the collision, a verdict should be directed. The jury should not be permitted to guess.

In my view the opinion of the court makes the motorist an insurer of the safety of small children who may be near enough to the traveled portion of a street to be able, suddenly and without warning, to dart in front of his car in such proximity as to make a collision inevitable. I would overrule the exceptions.