LEO FONTAINE, INDIVIDUALLY
AND AS NEXT FRIEND OF
BRUCE FONTAINE, A MINOR
*vs.*
EVELYN L. JONES, ET AL.

Oxford.   Opinion, October 3, 1960.

*Albert Beliveau,*
*William McCarthy,* for plaintiff.

*James R. Desmond,*
*Richard Whiting,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J.   This case arises upon appeal by the plaintiffs from a judgment for the defense entered after a directed jury verdict for the defendants. The plaintiffs pro-

test that the presiding justice erred in imposing the verdict. There was other error assigned by the plaintiffs which they have abandoned by their election not to prosecute it in their briefs.

On January 10, A. D. 1958, a school day, Evelyn L. Jones drove her husband's car northerly from her residence on the easterly side of a one way street and in the direction authorized. The car inferentially struck and severely injured Bruce Fontaine, a boy of 4 years, who with his father seeks damages. The issue resolves itself into one of the sufficiency of the evidence to prove causative negligence upon the part of Mrs. Jones.

Scanty, indeed, is the record evidence. There is testimony of no eye witness to the regrettable accident save for the meager provisions of Mrs. Jones who was very responsive but who appears to have been interrogated guardedly and selectively by counsel of both parties. She had been offered and examined concerning her driving by the plaintiffs.

The boy Bruce had been warmly dressed and let out to play about his home which was on the westerly side of the street a short distance north of the Jones residence. His mother noticed him in conversation with a neighbor. Some 20 minutes later the mother heard crying and was informed by the neighbor that her son had been hurt. The mother hurried to the street. She can not remember where her boy was lying with reference to the position of the Jones automobile but recalls that when she entered the car to go to the hospital:

" - - - the front end of the car was clear of the tree.

"It was favoring the right side of the road.

"And it was near the center of the street.

"I would say that the sled was about a car's length behind the car."

Obviously the boy had been sliding. We may or may not have testimony of the position of the sled immediately after the accident.

Some days later Mrs. Jones told the Fontaine parents in response to their inquiry as to what happened, as follows:

> "She said she saw him (the boy) lying in the street on the sled and he was looking up at her and she couldn't stop." "About 1.15"

Mrs. Jones testified:

> "Q. Did you see a break in the snow bank in front of Fontaines'?
> "A. When Bruce came into the street I noticed a break."

Mrs. Jones had left her home in the automobile to go to market. She related that she saw no children on the banking on the westerly or Fontaine side of the street and felt safe since the children were in school and not sliding. The bank was not so high opposite her house as it was at Fontaine's home. Mrs. Jones had operated cars for years and during the winter of 1958 had driven much on her street. She had an unobstructed view of some point in front of the Fontaine dwelling as she entered her car. No attention has been called to the circumstance but upon a one way street coming traffic was of little concern. The bank might have been higher than 6 feet in front of Fontaines'. There was always the possibility, she said, that children might be sliding on the bank across the street when there was snow. She had observed them doing so but not on the day of the accident. She could not swear that she had never noticed the path in front of the Fontaine house but had noted other paths although she had never seen children sliding in the paths. She watched for children that day but saw none. She testified:

> "A. I looked both sides of the road on the bank at the left to see if there was anything and right.

"Q. But you expected there might be children sliding there as you had seen them before?

"A. Yes.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"Q. You don't know how much higher the snow was than the path itself?

"A. No. Only from what I observed at the time of the accident.

"Q. Was it so high that you think you could not observe a child on that path?

"A. That's right.

"Q. You knew that when you were driving down that road?

"A. No, because I wasn't aware of a path over that particular spot at that time.

"Q. But you were aware of other paths?

"A. That's right.

"Q. So far as you were concerned there was no path?

"A. That's right.

"Q. Did you see a break in the snow bank at the road in front of Fontaines?

"A. When Bruce came into the street I noticed a break.

"Q. That is the first time?

"A. That's right.

"Q. You never noticed it before?

"A. I must have but I can't swear to that."

There is a complete dearth of detail as to snow depth or conditions, as to the state or breadth of the traveled way in the winter setting, as to distances or speeds, as to the particular nature, location or characteristics of the "bank" so-called or of the significant path. The sled is not described or classified, nor is its speed or behavior. We are at a loss to know the action or impacts of the collision.

We deduce that the boy plaintiff was struck and injured somehow by the automobile operated by Mrs. Jones. The event occurred upon the street opposite the outlet of a path the special features of which such as angle, grade, pitch and perceptibility are not recorded except for Mrs. Jones' testimony that the adjacent snow was so high as to have concealed from her view any child who might have been upon the path. We are given no information as to how little or long the path had existed.

There are no data of the car's speed or control, of the position of the car or child when the latter became noticeable, of the avoidability of the collision or of the practice of reasonable care or culpable negligence by the operator. Testimony of the advent, direction and speed of the sled could be very determinative here.

If we view the testimony in the light most favorable to the plaintiffs we are told that the boy somehow came into the street, that Mrs. Jones saw him lying on the sled and she could not stop. Do such circumstances unexplained warrant an inference of negligence on the part of the driver? Can we say without more what instrument caused rather than occasioned the damage here and that it was the automobile under the management and control of Mrs. Jones? Mrs. Jones possessed an unquestionable legal right to operate the car upon the public way compatibly with usage of the street by others. Those who drive our streets in snow time know from common experience that children upon sleds at times abruptly glide or scurry out of white cover upon careful but powerless motorists and the antics of a sled with its limited controls and young rider can be highly unpredictable.

This court has said:

" - - - There must be negligence. The defendant is not an insurer. Edwards v. Power and Light Co., 128 Me., 207, 146 A., 700.

"It must not be be a question of conjecture. The circumstances of the accident must indicate negligence. Nichols v. Kobratz, 139 Me., 258, 29 A., 2d, 161; Winslow v. Tibbets, 131 Me., 318, 162 A., 785. If there are several reasons why the accident may have happened, for some of which the defendant would be liable, and others for which defendant would not be liable, the jury is not at liberty to guess which reason caused the accident. Deojay v. Lyford, 139 Me., 234, 29 A. 2d, 111. Where, in a negligence case there are two or more possible causes and the true cause is conjectural, 'the Court cannot, and the jury should not, select.' McTaggart v. Railroad Co., 100 Me., 223, 60 A., 1027." *Stodder* v. *Coca Cola, Inc.*, 142 Me. 139, 143.

The instant case is distinguished from *Bean* v. *Butler*, 155 Me. 106, where the record contained testimony that upon the public street in a school zone and opposite a playground where 2 small children, one aged 2½ years and the other 5 years, as the defendant approached driving his car. He admittedly saw the children. He continued on his way striking the younger child. The obvious presence and proximity of those children under the attendant circumstances in the judgment of the court presented such a hazard as to render acute, immediately applicable and obligatory the fulfillment of a subsisting responsibility upon the driver. The conclusion was that the evidence was sufficient to present a question for jury determination as to whether the operator had satisfied the standard of reasonable care or had been remiss. A verdict directed for the defense was set aside.

The meager facts in the present case are on the other hand consistent with the "sudden appearance doctrine" discussed in *Bean* v. *Butler, supra,* 108. Mrs. Jones remains uncontradicted in her assertion that the snow was sufficiently high to conceal from view any child using the path and that the break in the snow was revealed only in the emergence of the boy from it. There is no evidence of the

prior presence about the street of any child or as to the manner or moment of the arrival of the boy plaintiff in the route of the automobile.

> " - - - the isolated fact that an accident has happened does not afford prima facie evidence that the accident was due to the negligence of the defendant. But if the accident, viewed in the light of the surrounding circumstances, is one which 'commonly does not happen except in consequence of negligence,' then if no explanation is offered, the jury may find that it was due to the negligence of the defendant."

*Cratty* v. *Aceto & Co.,* 151 Me. 126, 132.

From the record in this case the unexplained accident is one which quite understandably could have happened in spite of due care of the defendant.

*Appeal dismissed.*

WEBBER, J. (CONCURRING)

I concur in both the decision and the opinion save only insofar as the latter attempts to distinguish the case of *Bean* v. *Butler,* 155 Me. 106. My dissent in that case was occasioned by a concern which I expressed that the "decision of the court will have far reaching consequences with relation to the duty of motorists to children on sidewalks and in yards adjacent to streets." If we but substitute the snowbank in the instant case for the parked cars in *Bean,* we have remarkable and unusual factual and evidentiary similarities in the two cases. In each case the plaintiff relied on an alleged admission by the defendant to raise a jury question as to the defendant's negligence. In *Bean* the admission was in effect that at some unstated time before the accident the defendant saw two children start to cross the street, one of whom, never actually identified as the injured plaintiff, turned back. As to the movements of the child thereafter or where the turning back took place the evidence

was silent. In the case before us, the admission was that defendant saw the injured plaintiff lying on a sled in the street looking up at her and she could not stop. In each case, then, the defendant saw the child ahead in the street (that is, if we assume without proof in *Bean* that the plaintiff was the child who "turned back") and in each case the defendant failed to stop. In both cases and to the same extent in each, the evidence failed to disclose where the child came from or when, or where the driver was when the child appeared, or what if any opportunity the defendant had to avert an accident. In each case the jury would be left entirely to conjecture and surmise as to the distance and relationship between child and driver at any given moment.

I deem it significant that the *only* case cited by the plaintiff in his brief as bearing on the duty and negligence of the defendant is *Bean* v. *Butler*. Until the novel doctrine of that case was announced, such situations as the one now before us were fully covered by *Bernstein* v. *Carmichael,* 146 Me. 446, and the applicable law was well understood. *Bernstein* realistically permitted the orderly flow of traffic, albeit with caution and vigilance, even when children were in the vicinity who might suddenly dart into the street from a place of concealment. In my view, *Bean* requires that under these circumstances the driver must stop and may not proceed further. I would take this occasion to overrule *Bean* v. *Butler,* especially since the court does not appear disposed to follow it in a case involving almost identical facts. I still adhere strongly to the view expressed in my dissenting opinion in *Bean* that the holding of that case "makes the motorist an insurer of the safety of small children who may be near enough to the traveled portion of a street to be able, suddenly and without warning, to dart in front of his car in such proximity as to make a collision inevitable." The decision in the instant case, resting as it does firmly on the authority of *Bernstein* v. *Carmichael,* is clearly right.