JOHN E. EATON *vs.* MILDRED C. AMBROSE.

Penobscot.      Opinion, July 19, 1935.

*Frank B. Foster*,
*Percy A. Smith*, for plaintiff.
*Fellows & Fellows*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

DUNN, J.   On August 19, 1934, a Super X motorcycle and a Ford automobile collided, in Bangor, to the personal injury of plaintiff, and damage to both vehicles. The accident happened in the space common to Broadway, Center Street, and Earle Avenue. Broadway, a street which, as traveled, is twenty-four feet wide, runs approximately northwest and southeast. Center Street, thirty-six feet wide, enters Broadway from the south. These streets join in front of Earle Avenue, which, commencing here, extends westward. In this vicinity, no street is intersecting either Broadway or Center Street from the east. The width of the cement pavement from Earle Avenue to the opposite side of Broadway is thirty-eight feet and nine inches.

Plaintiff was driving the motorcycle. He has the general verdict, in this action against the automobile driver, for $1,548.00. De-

fendant moves for a new trial, assigning the verdict against the evidence, or the weight of the evidence, and the damages excessive.

The motion narrows, on argument, to the question of contributive negligence. Contributory or cooperative negligence exists where, but for the negligence or wrong of both parties, there would have been no injury. *Alexander* v. *Missouri, etc., Railroad Company,* 287 S. W., (Tex. Civ. App.) 153, 155.

The motorcycle was proceeding southeasterly, on its own side of Broadway, the intention of its driver being to bear right, pass the mouth of Earle Avenue, (twenty-five feet plus shoulders,) and thence go toward and into Center Street. Estimates of speed by several witnesses differ within the limits of twenty to thirty miles per hour. A prospective purchaser of the machine was riding on its rear seat.

Defendant's automobile (hers at least for the time being) was going northerly on Center Street. She testifies, without contradiction, that the car was traveling slowly, and that on the "turn" of later mention, its speed was ten to fifteen miles, hourly.

The day was fair; the time around noon; no other traffic was in sight; the view of each driver was unobstructed for a considerable distance.

Witnesses testified with reference to a crayon sketch, absence of which makes it difficult to understand the meaning intended by "here" and "there," words of rather frequent recurrence in the printed transcript of the testimony.

However, while the motorcycle was yet on Broadway, definitely where is not shown, but north of the northerly junction of Earle Avenue, plaintiff, on observing the automobile on Center Street, said to his passenger: "Which way is that fellow (defendant) going?" This is not further detailed.

Plaintiff drove forward, speed unchecked. He claims to have entered the intersection area first, and blames the collision wholly on the defendant. Plaintiff testifies: "The car swung towards me and I didn't know which way the girl was going to go, and I swung in towards the curb. I could see the bumper coming towards me, and that is the last I remember."

The postulate of plaintiff's case is that the automobile, making its appearance, suddenly and in violation of road regulation, in

the area south rather than north of a prolongation of the middle line of Earle Avenue, barred the path of the motorcycle, creating an emergency; that thereupon plaintiff quickly veering to the extreme right, drove in front of the automobile the remaining distance across the street mouth to where the automobile pushed his motorcycle and those on it violently against the stone curbing. His contention is that he exercised due care to escape collision, and that though, in retrospect, he may appear to have erred in judgment, yet the error was one for which he should not be penalized.

The motorcycle passenger, while on the witness stand, said that one hundred feet north of Earle Avenue he saw the automobile opposite that avenue; that the motorcycle was in the "section" (in one place he states that it was half way across,) before the automobile started to turn. On cross-examination, he said that when the automobile, on Center Street, turned for Earle Avenue, the motorcycle driver attempted to go around the front end of the car, and "didn't quite make it."

Defendant testified: "I made my turn and my car was about facing Earle Avenue, and all of a sudden a motorcycle came right on top of me." Again: "I did not see anything coming either way, up Center Street in back of me, and I did not see the motorcycle until it crashed right into me."

No other person, except defendant's daughter, appears to have seen the accident. Men who, as testimony discloses, came promptly, testify to physical facts indicative of the place of initial impact, namely, at or near the southwest corner of Earle Avenue and Center Street. The jury viewed the locus.

The sufficiency of the evidence to maintain a given fact, such, for example, as plaintiff's due care, is primarily for the trial court, but the triers must find facts, not from speculation or conjecture, but from evidence. If the evidence, on a point essential to sustain the verdict, is clearly against the verdict, a new trial should be granted. *Chesley* v. *King*, 74 Me., 164. That the jury had a view presents no insuperable obstacle to granting a new trial, on the ground that the verdict does not accord with the evidence. *Davis* v. *Jenney*, 1 Met., 221; *Tully* v. *Fitchburg Railroad Company*, 134 Mass., 499.

The majority of the members of the court are of opinion that

there was small choice in the negligence of the parties; further, that negligence on plaintiff's part justifies declaring, as a matter of law, that he did not exercise, for his own safety, the measure of care a prudent man would in the same circumstances; indeed, that the evidence tends, not to affirmative proof of the exercise of ordinary caution, but to negative it.

In driving, plaintiff had the right of way, but abstract rights sometimes have to yield to concrete realities. "The supreme rule of the road is the rule of mutual forbearance." *Fitts* v. *Marquis*, 127 Me., 75, 140 A., 909.

The driver of a motor vehicle, when proceeding across an intersection, is not relieved of the duty of maintaining a lookout. The evidence, as the majority read and understand it, leaves little or no room for doubt that, had plaintiff, after seeing the approaching automobile, (then quite as near one side of the area as his motorcycle was to the other,) kept a proper lookout, and taken the movements of the car into consideration, opportunity for him, as the car turned into the avenue, to have avoided accident, would have been ample.

His impulsive act in attempting to drive his motorcycle in front of the automobile, was without relation to the proper theory and practice of the control of motor vehicles in like situations.

Where, as in the present case, the testimony shows contributory negligence, the verdict cannot stand. *Rouse* v. *Scott*, 132 Me., 22, 164 A., 872.

*Motion sustained.*
*Verdict set aside.*
*New trial granted.*