JOSEPHINE MCCAFFREY ET AL.
*vs.*
JOHN W. SILK, JR.

Hancock.   Opinion, March 12, 1954.

*Ralph E. Masterman,* for Plaintiff.

*Smith & Fenton,* for Defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, WEBBER, JJ.

WILLIAMSON, J.   This is a tort action against a plumber for damages allegedly caused by negligence in the performance of his work.   The case is before us on exceptions to the granting of defendant's motion for a non-suit.   The only

issue is defendant's negligence. We are not here concerned with plaintiffs' due care, or damages. Our duty "is simply to determine whether, upon the evidence, under the rules of law, the jury could properly have found for the plaintiff." *Johnson* v. *New York, New Haven & Hartford R.R.,* 111 Me. 263, 88 A. 988 (1913); *Glazier* v. *Tetrault,* 148 Me. 127, 90 A. (2nd) 809 (1952).

From the record a jury could find the situation here set forth briefly and not in detail.

In May 1949 the plaintiffs employed the defendant to make alterations in the plumbing in "Rockhurst Cottage," a tourist home, for the purpose of improving the water service on the third floor. The system was changed from low to high pressure. The municipal water pressure of about eighty pounds was reduced by a pressure reducing valve to between forty-five and fifty pounds.

In the kitchen suspended from the ceiling was a hot water tank or boiler at least thirty-five years old built "for a low pressure tank . . . any plumber could tell." The water was heated ordinarily by the kitchen range and also when needed by a "booster" heater in the basement.

The system operated without incident until the plaintiffs for the first time caused the "booster" heater to be put into use on July 17th. Within a few hours Mrs. McCaffrey, a plaintiff, noticed a small leak in the tank, and then three or four leaks . . . "it kept getting worse in seconds.' . . ." At her urgent request the defendant sent two employees to the cottage, who warned Mrs. McCaffrey and her daughter to get away from the tank, shut off the water and opened faucets. "Just then there was a terrific noise and I (Mrs. McCaffrey) thought there was dynamite or something exploded, and the boiler folded right up. . . ."

The basic claim of negligence in the declaration is that the defendant in changing the system from an open or low

pressure to a closed or high pressure system "failed to install a relief valve in the proper place above said boiler, but instead installed the relief valve for said boiler in the basement of said house under said boiler." There was no such valve above the boiler.

Mr. Graham, a plumber, testified as follows:

"Q. Referring to the plan up on the board, in accordance with this Code (State Plumbing Code in evidence) where should the temperature relief valve be placed?

A. It should be in the tank or on the hot circulating line.

Q. Now, Mr. Graham, referring to the plan that is on the board, with the pressure reducing valve here and the relief valve here as indicated, was there any protection to excessive heating for this boiler?

A. None whatsoever until the boiler became to a danger point—way above a danger point.

Q. Then what would happen?

A. If somebody relieved the pressure quick enough, you would have a case of dynamite or something like that go off in your kitchen."

A jury could reasonably reach the following conclusions:

(1) The leaks in the hot water tank were caused by the overheating of the water in the high pressure system through use of the "booster." To say, as does the defendant in substance, that the tank may have given way simply from old age and because of its condition fails to give justifiable weight to evidence that the difficulty came when the "booster" was first used after the change from low to high pressure.

(2) The tank "burst" within the fair meaning of the declaration.

(3)　The tank "collapsed" from the action of defendant's employees taken to prevent the possibility at least of an explosion.

(4)　A temperature relief valve installed where indicated in the State Plumbing Code and by Mr. Graham would have protected the plaintiffs against the dangers inherent in control of hot water under pressure.

Under these circumstances, a plumber could not complain should a jury find he did not exercise due care under the circumstances. The plaintiffs were entitled on this record to go to the jury. The non-suit should not have been granted.

On a second trial counsel should endeavor, particularly if either believes the case will again reach this court, to make a record that is complete and clear. References to a plan drawn upon the board, and to points "here" and "there" on the plan useful as they are to the fact-finders, are often of little or doubtful value to those who must rely upon the record. Care must be taken in the trial court to preserve the vital points in the record, to the end that the appellate court may fairly understand the meaning, intent, and value of the evidence. In brief, in presenting a "live" case to a jury or court, counsel must keep in mind the necessity of a record for the Law Court. The entry will be

*Exceptions sustained.*