DONALD F. WARD
*vs.*
PAUL E. MERRILL
D/B/A MERRILL TRANSPORT COMPANY

Cumberland. Opinion, May 14, 1958.

*James E. Gagan,*
*Robinson, Richardson & Leddy,* for plaintiff.

*Verrill, Dana, Walker, Philbrick & Whitehouse,*
for defendant..

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. BELIVEAU, J., sat at argument but retired before the opinion was adopted.

DUBORD, J. This is an action to recover for injuries to the person and property of the plaintiff caused by an automobile collision and is based upon the alleged negligence of the operator of defendant's truck. A cross action between the same parties was tried at the same time. At the conclusion of the evidence, upon motions made in behalf of both parties, the presiding justice directed verdicts for the defendants in each case. The matter is before us on exceptions of the plaintiff, Donald F. Ward, to the direction of a verdict for the defendant, Paul E. Merrill.

The accident occurred at the intersection of Cottage Road and Broadway, two public highways in the City of South Portland. Cottage Road runs in a general northerly and southerly direction and intersects with Broadway which runs in a general easterly and westerly direction. Traffic at this intersection is controlled by a rather elaborate system of traffic lights. The plaintiff was travelling north on Cottage Road and approaching the intersection. Defendant's employee, admittedly within the scope of his employ-

ment, was operating defendant's trailer truck in an easterly direction on west Broadway and approaching the same intersection.

The plaintiff testified that when he was from 200 to 250 feet southerly of the intersection, he looked to his left and saw defendant's truck proceeding easterly on Broadway while the truck was between 300 and 400 feet from the intersection. From that point on, plaintiff did not see the defendant's truck again until the collision. Plaintiff testified that in the interim, his attention was given to school children out for a school recess in the vicinity. He also observed and took heed of pedestrians on the corner of the intersection. He also noted that there were cars stopped on his right ready to enter the intersection upon receiving a favorable light. The plaintiff, insisting that he had a green light, drove into and across the intersection, and said that he had proceeded "a little beyond half way through the intersection" when the left side of his vehicle was forcibly struck by the front end of defendant's truck.

At the conclusion of the evidence, upon motion for a directed verdict on the part of the defendant, the presiding justice made a statement to the effect that in his opinion it made no difference who had the green light and who had the red light. He expressed the opinion that both drivers were negligent and apparently upon the theory that there was a duty on the part of the plaintiff to constantly be on the lookout for defendant's truck, ruled that the plaintiff was guilty of negligence as a matter of law and ordered the verdict upon which these exceptions are based.

The issue before us, therefore, is whether or not the ruling of the presiding justice was warranted, bearing in mind that the evidence, with its inferences must be viewed in the light most favorable to the plaintiff.

"Under the familiar rule we must determine whether reasonable persons taking the evidence

with its inferences in the light most favorable to the plaintiff could conclude that plaintiff was in the exercise of due care." *Crockett* v. *Staples,* 148 Me. 55, 56; 89 A. 2d. 737.

"The principle of law which controls the action of this Court, when exceptions are presented to test the propriety of a nonsuit or a directed verdict for the defendant in the Trial Court, is to determine only whether upon the evidence under proper rules of law 'the jury could properly have found for the plaintiff,' *Johnson et al* v. *New York, New Haven and Hartford Railroad et al.,* 111 Me. 263, 88 A. 988; and in determining that issue, the evidence must be considered in that light which is most favorable to the plaintiff, *Shackford* v. *New England Tel. and Tel. Co.,* 112 Me. 204, 91 A. 931." *Barrett* v. *Greenall,* 139 Me. 75, at 80; 27 A. 2d. 599.

The evidence, most favorable to the plaintiff indicates that he entered the intersection upon the invitation of a vertical green arrow which in the language of R. S. 1954, Chapter 22, § 87, Subsec. I, gave him permission to "go." There is some corroboration of plaintiff's testimony on this point in the record. At the same moment, the defendant's driver approaching from plaintiff's left, was faced by a red light which under the provisions of Subsec. III meant "Stop" and denied him permission to proceed straight through the intersection. He was also faced with two green arrows, both constantly alight, one pointing right and one left. These arrows permitted him to enter the intersection for the purpose of making a desired turn as long as he did so cautiously, yielding the right of way to traffic lawfully in the intersection, all as provided by Subsec. IV. The plaintiff, when he was 200 to 250 feet back from the intersection, observed the defendant's truck some 300 to 400 feet away from the intersection proceeding in a line of traffic. He did not see the truck again until just as it was about to strike the left side of his car. The contention of plaintiff

that he was a little beyond half way through the intersection has some corroboration in the evidence.

There was, of course, a duty on the part of the plaintiff to exercise care and vigilance. However, the children playing in the school yard, the pedestrians on the corner, the cars on his right, as well as the lights themselves, also demanded part of plaintiff's attention as did the traffic which was moving up on his left.

The law applicable to intersections controlled by stop signs has equal application here. In *Crockett* v. *Staples,* 148 Me. 55, 59, it was stated:

> "The plaintiff was not bound to anticipate defendant's negligence. He 'had a right to consider that the defendant would observe the law as to stopping.' * * * Putting the case differently, we have *first,* a period within which plaintiff could properly rely upon defendant's stopping at the stop sign and yielding the right of way to the plaintiff, and *second,* a period brief indeed within which plaintiff knew, or should have known, that the collision must occur unless he stopped or in some manner altered his course. Where were the plaintiff and the defendant when the first period ended? Did the plaintiff thereafter fail, as a matter of law, to exercise due care under the circumstances?
>
> We conclude that the question of contributory negligence was properly for the jury to answer."

The facts in the case of *Clark* v. *Philadelphia Housing Authority, et al.,* 161 Pa. Super. 542; 55 A. 2d. 435, are very similar to those in the instant case. The court said:

> "We think this is a plain case where plaintiff's contributory negligence could not be declared as a matter of law. Plaintiff was entitled to the protection afforded her by the fact she entered the intersection with the traffic lights in her favor."

Lights are installed for the purpose of regulating traffic. Driving against red or with a green light are acts to be

considered in arriving at the question of negligence on the part of a motorist.

Applying these rules to the evidence here most favorable to the plaintiff, it follows that when he entered the intersection, he could properly assume that the operator of defendant's truck would either stop for the red light or would make a left turn on his constant green left arrow for the purpose of travelling north on Cottage Road, or make a right turn on his constant green right arrow for the purpose of travelling south on Cottage Road. The mere fact that the truck was continuing in motion into the intersection would not in and of itself be an evident indication of danger, because of the possibility of a left or right turn, either of which could be made without interfering with the plaintiff's course of travel. It was only when it became obvious that the defendant's driver was not going either to stop or to make a left or right turn that the plaintiff could no longer assume that the truck driver would obey the law. It is apparent that from the time this occurred until the plaintiff was struck was less than a second.

In *Jordan* v. *Kennedy*, 180 Pa. Super. 593; 119 A. 2d. 679, the Court used language most appropriate to the facts before us. At page 681, the Court said:

"Although one approaching a street intersection must always be vigilant, he cannot be held to the same high degree of care at an intersection with a traffic light giving him the right of way as at an intersection where there is nothing to regulate the right of way. He need not approach an intersection with a green traffic light quite so slowly, nor look so continuously for approaching traffic, first because he has a right to assume traffic on the intersecting street will stop for the red light and secondly because he must divide his attention between approaching traffic and the light.

"It is our opinion that the learned lower court attempted to hold (plaintiff) to the exact degree of

care that would have been required of him had there been no light in his favor at the intersection. This was error. To hold that there is the same degree of care imposed upon a motorist with a favorable light as one without any right of way would thwart the purpose of traffic lights to facilitate the flow of traffic."

In our opinion, the record indicates conflicting questions of fact, which should have been for the determination of the jury.

This Court, as a reviewing tribunal, has been greatly handicapped by the fact that much of the evidence centers about a diagram or "chalk" drawn on the blackboard not reproduced for us.

The transcript is replete with references to "skid marks," points "X" and "B" and the words "here" and "there."

By way of admonition to counsel who propose to bring causes before this Court, we refer to the following cases:

"It is difficult from the printed record to say how the accident occurred. The 'here' and the 'there' of witnesses, in pointing to the plan of the scene of the accident, to supplement speech and to illustrate meaning, may have had significance not discernible to the seekings of the reviewing mind." *Fitts* v. *Marquis,* 127 Me. 75, 79; 140 A. 909.

"Witnesses testified with reference to a crayon sketch, absence of which makes it difficult to understand the meaning intended by 'here' and 'there,' words of rather frequent recurrence in the printed transcript of the testimony." *Eaton* v. *Ambrose,* 133 Me. 458, 460; 180 A. 363.

"Much of the evidence centered about a diagram or 'chalk' drawn on a blackboard by a police officer. There is testimony so often found of a 'street here,' and 'skid marks there.' The diagram was not introduced in evidence. The record of a trial with its transcript of testimony, exhibits and

photographs, cannot include the 'chalk,' not introduced in evidence, which ends with the use of an eraser. No more can the 'chalk' be restored by an appellate court on study of the record, assuming, which is not the case, a duty to attempt such a difficult and unnecessary task." *Stearns* v. *Smith,* 149 Me. 127, 129; 99 A. 2d. 340.

"The party who brings his case forward has the burden of submitting a sufficient and complete record. In the instant case, if the decision rested upon consideration of the 'chalk' and the evidence of 'here,' and 'there,' the exceptions would necessarily be overruled. A simple plan, introduced as an exhibit, to which the evidence of places, often vital in a trial, may be related, has a value for the record far greater than a 'chalk.'" *Stearns* v. *Smith, supra.*

"On a second trial counsel should endeavor, particularly if either believes the case will again reach this court, to make a record that is complete and clear. References to a plan drawn upon the board, and to points 'here' and 'there' on the plan useful as they are to the fact-finders, are often of little or doubtful value to those who must rely upon the record. Care must be taken in the trial court to preserve the vital points in the record, to the end that the appellate court may fairly understand the meaning, intent, and value of the evidence. In brief, in presenting a 'live' case to a jury or court, counsel must keep in mind the necessity of a record for the Law Court." *McCaffrey et al* v. *Silk, Jr.,* 150 Me. 58, 61; 104 A. 2d. 436.

As was said in *Stearns* v. *Smith, supra,* "If the decision in the instant case rested upon consideration of the 'chalk' and the evidence of 'here' and 'there' the exceptions would necessarily be overruled."

However, as previously indicated, careful study of the record indicates to us that there were questions of fact

 

for the decision of the jury, and that the presiding justice erred in directing a verdict for the defendant.

The entry will be:

*Exceptions sustained.*