**STATE**

v.

**Michael L. WATKINS.**

**No. 81–104–C.A.**

Supreme Court of Rhode Island.

Aug. 10, 1982.

Dennis J. Roberts II, Atty. Gen., Kenneth P. Madden, Asst. Atty. Gen., for plaintiff.

Cappuccio & Cappuccio, Frank S. Cappuccio, Westerly, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, Michael L. Watkins, from a judgment of conviction on both counts of an indictment charging him with (1) driving so as to endanger, resulting in death, in violation of G.L.1956 (1968 Reenactment) § 31–27–1, as amended by P.L.1978, ch. 208, § 2, and (2) failure to stop in an accident resulting in death, in violation of G.L.1956 (1968 Reenactment) § 31–26–1, as amended by P.L. 1978, ch. 208, § 1.

The case was heard before a justice of the Superior Court sitting with a jury. At trial, the following evidence was adduced. At approximately 7:15 p. m. on May 4, 1980, defendant's vehicle struck the victim, a six-year-old boy, on the Bradford Bridge. The bridge, which is part of Route 91, divides the town of Westerly, in the south, from the town of Hopkinton, in the north. The collision occurred in a no-passing zone of a two-lane asphalt road with a posted speed limit of thirty miles per hour. A solid double-yellow line divides the two lanes in the no-passing zone. Several witnesses, including six eyewitnesses, testified for the state. Doctor Arthur C. Burns, Deputy Chief Medical Examiner for the State, testified that the victim died shortly after receiving multiple injuries and that the manner of death was "homicide," which he defined as "the death of one individual incurred by the act, commission or omission of another individual."

Chief Donald E. McCumiskey of the Hopkinton police department gave a description of the accident scene. The police chief testified that the surrounding neighborhood was a residential and business area and characterized the Hopkinton portion of the road as needing repair. He also testified that there was a gradual incline or hill leading from the bridge northward to Hopkinton for about one-eighth to one-quarter of a mile. He stated that the bridge was visible from the crest of the hill. Relying upon his observations, Chief McCumiskey placed the accident in the northbound lane, which was not defendant's proper lane of travel.

Edward Ellis testified that while he was driving southbound on Route 91 on the day of the incident, defendant passed him using the northbound lane about 400 feet from the bridge. He estimated defendant's speed at about seventy miles per hour. Mr. Ellis stated that defendant went back into

the southbound lane after passing and that at that time the victim was crossing the road. He also testified that at that time there were approximately seven vehicles on both sides of the bridge and that several people, including children, were on the bridge. As the victim was reaching the middle of the road, Mr. Ellis stated, the left side of defendant's car hit him. He testified that defendant's car fishtailed as soon as it hit the child, that the brake lights came on only upon contact with the child, and that defendant failed to stop after the impact. Mr. Ellis chased after defendant's vehicle but could not overtake it. Janet Ellis, who was a passenger in the Ellis vehicle, gave basically the same testimony as Edward Ellis.

Daniel Blinn, who was also a passenger in the Ellis vehicle, observed defendant's car pass the Ellis car in the northbound lane about 150–200 feet from the bridge traveling at a speed of at least sixty miles per hour. Mr. Blinn could see the victim in the middle of the road before the car in which Mr. Blinn was riding reached the bridge. According to Mr. Blinn, after defendant's car passed his car and returned to the southbound lane, the child stopped in the road and looked down the southbound lane, made a movement to return to the west side of the street and then stopped. Mr. Blinn did not see the actual impact, but he did observe that the brakes of the oncoming car were not applied when the collision occurred. After the incident, Mr. Blinn saw the child land against the base of a telephone pole on the west side of the bridge.

John Rosa testified that as he approached the bridge driving northward, he saw people, including children, fishing from the bridge and approximately five vehicles on the bridge. A boy started to cross the road as Mr. Rosa approached, and Mr. Rosa stopped his car so that the boy could cross in front of him. After the boy crossed the road, Mr. Rosa saw the victim and another child standing on the west side of the road. Because the two children were not crossing the street at that time, Mr. Rosa proceeded ahead. He then observed defendant's vehicle traveling south over the crest of the hill

at a speed in excess of sixty miles per hour. Mr. Rosa looked back and observed the victim walk into the middle of the southbound lane. He then saw defendant's car collide with the child. According to Mr. Rosa, the oncoming vehicle swerved to the right and the brakes were applied, but the car did not come to a complete stop. The force of the impact, Mr. Rosa stated, propelled the child about two hundred feet through the air. The child landed next to a telephone pole on the west side of the road. The defendant's car continued down the road and was pursued by another vehicle. Mr. Rosa then called the police. On redirect examination, Mr. Rosa stated that the child did not run onto the road but merely stepped onto the road. He further testified that the bridge was clearly visible from the crest of the hill, the direction from which defendant's car was traveling.

Charlene Rosa, a passenger in John Rosa's vehicle, stated that at the time of the incident there were several vehicles on the bridge plus approximately seven adults and three children. Mrs. Rosa testified that her husband, who was traveling in the northbound lane, stopped to let a child cross the street. She then observed defendant come over the hill in his vehicle traveling at approximately sixty miles per hour in the southbound lane. The defendant was leaning against the window of his car. Mr. Rosa did not witness the actual impact, but she did see the child land at the side of the southbound lane after being hit.

Ralph DeCiantis, who was fishing on the bridge with his three sons and the victim on the day of the incident, gave the following testimony. While he was fishing with his back turned to the street, one of his sons and the victim were crossing the road. Someone yelled, prompting Mr. DeCiantis to turn around and view defendant's car hit the victim, who was in the middle of the road. According to Mr. DeCiantis, the oncoming car was over the center line when the left front of the vehicle hit the boy. The child was then thrown through the air. Mr. DeCiantis believed that the car's brakes were applied before the collision. After the

accident, the vehicle did not stop but continued down the road. Mr. DeCiantis went over to the telephone pole where the child had landed and saw that the child had several bruises. Because he did not observe the victim move, Mr. DeCiantis placed a blanket over him.

Officer Michael Johnson of the Westerly police department testified that he arrived on the scene shortly after the accident, examined the badly bruised body of the victim, and found no signs of life.

The defendant testified as follows. He was driving in the southbound lane on Route 91 at approximately forty-five miles per hour. When he was about 500 feet from the bridge, he slowed down his vehicle because he saw a boy with a fishing pole cross the road. He then saw the victim walk into the middle of the road from the east side of the road, turn around, and look at defendant's vehicle. Because the victim walked back to the east side of the bridge and disappeared behind some parked cars, defendant continued driving. When defendant was almost off the bridge, the victim ran across the northbound lane into defendant's lane. The defendant did not see the victim until the boy was right in front of defendant's vehicle. Before his car collided with the boy, defendant had turned his wheel to the right to avoid hitting the child and then had applied his brakes. The front left corner of defendant's car hit the child, and the boy landed on the west side of the road near a telephone pole. The defendant said that he then "panicked" and kept driving down the road. He stopped his car several miles away from the accident scene because his left front tire was almost flat. The defendant then walked a few miles to a phone booth, called his attorney and hitchhiked to the police station. The defendant admitted that he knew he had been in an accident, that his vehicle had hit the victim, that the victim had been hurt, and that he did not stop at the accident scene.

I

■ The defendant raises several allegations of error. He contends that the trial justice failed to instruct the jury properly on proximate cause. Specifically, defendant argues that the trial justice erred because he instructed the jury not to consider the victim's conduct in determining whether defendant's conduct was a proximate cause of the death. The language to which defendant objects is as follows:

"In this case, we are not concerned with the behavior of [the deceased]; whether [the deceased] ran across the street recklessly or not. And even if [the deceased] was reckless and contributed to his own death, it is of no consequence, and it is your duty to weigh the evidence and determine if the State has proven beyond a reasonable doubt that the conduct of the accused was the proximate cause of his death, according to the instructions in this case."

In his supplemental charge on the elements of the offense, the trial justice repeated this instruction.

The crux of defendant's argument is that in his instructions on proximate cause, the trial justice was required to instruct the jury on the victim's conduct because the jury could reasonably infer from the evidence presented that the victim's actions were the sole proximate cause of his own death. We disagree.

In *State v. Dionne*, R.I., 442 A.2d 876, 887 (1982), we held that:

"When one drives a motor vehicle in violation of the criminal law pertaining to the operation of such a vehicle on a public highway and, in doing so, causes the death of another, the deceased's negligence is irrelevant absent evidence that would support a finding that the deceased's conduct amounted to an independent intervening cause. [Citations omitted.]

"The doctrine of independent intervening cause recognizes that there may be concurrent proximate causes that contribute to an individual's injuries or death and that a person's misconduct is not always rendered remote in the causal sense because of the intervening of a

second cause. If the independent or intervening cause is reasonably foreseeable, the causal connection remains unbroken. [Citations omitted.] In other words, before the trial justice is obligated to charge the jury regarding the consideration that may be given to the deceased's conduct in a case such as the one at bar, evidence must have been introduced which would indicate that the deceased's conduct was the sole cause of [his] death and that the defendant's conduct had nothing to do with the fatality."

In the instant case, defendant admitted that he could see children crossing the bridge when he was approximately 500 feet from the bridge. This testimony was corroborated by the eyewitnesses. The defendant further admitted that when he was 500 feet from the bridge, he saw the victim walk into the middle of the street and then turn and walk back to the left side of the road. The defendant stated that because he saw the victim return to the side of the street, he did not slow down but continued driving at a speed of approximately forty miles per hour. The defendant also admitted that he struck the victim but contended that the child darted out into the street, creating a sudden emergency. The defendant further stated that he swerved to avoid the child and then applied his brakes. All the eyewitnesses testified that defendant was driving in excess of sixty miles per hour at the time of the incident and that the victim did not dart, but walked across the street. They also testified that the brakelights on defendant's car did not illuminate until immediately before or after the collision. There was further testimony that the bridge was a popular fishing area on the weekends.

We conclude that in the case at bar, a reasonable inference could be drawn that the victim's conduct in crossing the road in front of oncoming traffic may have been negligent and may have been a proximate cause of his own death. However, the evidence does not support a finding that the victim's conduct was the sole proximate cause of his death and that defendant was not a proximate cause of the fatality. The

defendant saw children in the vicinity of the bridge. Therefore, it was reasonably foreseeable to him that a child might walk or dart across the bridge in front of his car. *See Bean v. Butler*, 155 Me. 106, 151 A.2d 271 (1959); Prosser, *Handbook of the Law of Torts* § 33 at 172–73 (4th ed. 1971). Under such circumstances, defendant had a duty to control his car so that he could stop promptly in case a child attempted to cross in his path. *Cf. Bean v. Butler*, 155 Me. at 109, 151 A.2d at 273–74 (in wrongful death action, court held that when children are in vicinity, driver has duty to have car under such control that he can promptly stop should child attempt to cross road). Moreover, in such a situation defendant should have reduced his speed to prevent any possible collision with a child. *Cf. McGee v. Bolen*, 369 So.2d 486 (Miss.1979) (in wrongful death suit, defendant negligent in failing to reduce speed after observing children near highway). As the evidence indicates, however, even though defendant saw children on the bridge, he continued driving his car at a speed of at least forty miles per hour and did not apply his brakes until immediately before or after the collision. The defendant's conduct, therefore, was clearly a proximate cause of the victim's death, and the child's conduct could not be held to be the sole proximate cause of the fatality. Accordingly, the trial justice did not err in instructing the jury not to consider the victim's conduct in determining whether or not defendant's conduct was a proximate cause of the death.

## II

█ The defendant also contends that the instruction of the trial justice on recklessness was inadequate and confusing. The trial justice instructed the jury, in part, as follows:

"Reckless driving is a driving in such a manner as to indicate either a willful or wanton disregard for the safety of the person or property of others. Willful means deliberate. It necessarily implies a certain degree of willpower or evil purpose or criminal intent. It implies a pur-

pose or willingness to commit the act referred to, and it excludes the inference that it might have resulted from accident or mistake. Wanton means without regard to the rights of others. Reckless connotes something more than the negligence of the defendant. It connotes a conscious and intentional driving that the driver knows or should know creates an unreasonable risk of harm to others, even though he has no actual intent to harm him. * * * 'Recklessness, like negligence, must be related to time, place, persons and surrounding circumstances and be measured by them. Excessive speed under some circumstances may amount to mere negligence and under other circumstances it may constitute willful or wanton disregard of the safety of others.' The question that you must ask yourself is, does the evidence show that the driver of the motor vehicle has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his actions. Mere error in judgment by a driver is not sufficient * * *. Among the elements you may consider in connection with determining whether or not a defendant's conduct was violative of the statute, are weather conditions, road conditions, drinking by a driver, speed of a vehicle, and any other factors which you determine bear upon the question of reckless operation."

We find that the instructions of the trial justice were in complete accord with this court's prior decisions. *See State v. Dionne*, 442 A.2d at 886–87; *State v. Arnold*, R.I., 404 A.2d 490 (1979); *State v. Lunt*, 106 R.I. 379, 260 A.2d 149 (1969). Accordingly, we hold that the trial justice committed no error.

### III

■ The defendant also argues that the trial justice erred in failing to instruct the jury on the "missing witness" doctrine, that is, that the jury could draw an adverse inference from the state's failure to call two eyewitnesses who were designated as intended witnesses in the state's response to defendant's discovery request. *See Benevides v. Canario*, 111 R.I. 204, 301 A.2d 75 (1973). Careful review of the record, however, reveals that defendant failed to request a charge on this issue and that he did not present an objection to the trial justice's failure to so instruct. He is therefore not entitled to review of this issue on appeal. *State v. Dionne*, 442 A.2d at 884–85; *State v. D'Alo*, R.I., 435 A.2d 317, 321 (1981).

### IV

The defendant also alleges that the trial justice erred in denying his motion for judgment of acquittal. The defendant initially argues that there was no competent proof of the death of the victim and that the evidence was insufficient to prove that defendant's conduct constituted reckless driving.

■ In passing on a motion for judgment of acquittal, the trial justice must view the evidence in a light most favorable to the state and draw therefrom all reasonable inferences consistent with a defendant's guilt, but must neither assess credibility of witnesses nor assign weight to the evidence. *State v. Dionne, supra; State v. Castore*, R.I., 435 A.2d 321 (1981); *State v. Sabitoni*, R.I., 434 A.2d 1339 (1981); *State v. McGranahan*, R.I., 415 A.2d 1298 (1980); *State v. Distante*, 118 R.I. 532, 375 A.2d 212 (1977). On review, we are guided by the same standards used by the trial justice in passing on the motion. *State v. McGranahan*, 415 A.2d at 1301.

■ Viewing the evidence in a light most favorable to the state, we find that the jury could reasonably infer that the victim's death occurred as a result of the collision with defendant's car. The deputy medical examiner testified that the victim's death resulted from multiple injuries and that the manner of death was homicide. In addition, several eyewitnesses testified that the victim was struck by defendant's car, that he was then thrown several hundred feet through the air, and that he did not exhibit any signs of life after the impact. The

evidence, therefore, is more than sufficient to permit a reasonable inference that the child died from injuries sustained after having been struck by defendant's vehicle.

■ The defendant also contends that the evidence was insufficient to show reckless driving. Conviction under the reckless-driving statute requires evidence that the defendant has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his action. *State v. Dionne*, 442 A.2d at 883; *State v. Arnold*, 404 A.2d at 492; *State v. Lunt*, 106 R.I. at 382–83, 260 A.2d at 151–52. The conduct must have constituted more than mere error in judgment by the driver and more than the negligence necessary to support a civil action for damages. *State v. Dionne*, 442 A.2d at 883. Moreover, the fact that a defendant drove at an excessive speed does not necessarily establish reckless driving. *State v. Lunt*, 106 R.I. at 383, 260 A.2d at 152. Recklessness must be related to the time, place, persons, and circumstances surrounding them. *Id.* Thus, excessive speed under some circumstances may be mere negligence but under other circumstances may constitute recklessness. *Id.*

■ Viewed in a light most favorable to the state, the evidence shows that defendant saw the potential danger on the bridge and did not slow down his car but continued to operate his vehicle with a heedless disregard for the safety of others. We conclude, therefore, that the state met its burden of proving that the conduct of defendant constituted reckless driving.[1]

### V

■ The defendant also contends that the trial justice erred in denying his motion for a new trial. In ruling on such a motion, the trial justice must exercise his independent judgment in considering all the material evidence and in passing on its weight and the credibility of the witnesses. The trial justice must then determine whether the state has met its burden of proof by what the trial justice perceives as the credible evidence. To prevail on appeal, the defendant must show that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong in ruling on the motion. *E.g., State v. Dionne*, 442 A.2d at 883.

The issues raised by defendant in challenging the denial of his motion for a new trial are identical to those that he raised in contesting the denial of his motion for judgment of acquittal. After a careful review of the trial justice's ruling on the motion, we are convinced that he carefully examined all the evidence, exercised his independent judgment in passing upon the credibility of the witnesses and the weight to be given to their testimony, and determined that the state's burden of proof was met by the credible evidence. Under such circumstances, we cannot say that it was error for the trial justice to deny defendant's motion for a new trial.

### VI

■ The defendant finally claims that the trial justice erred in refusing to disqualify himself from ruling on the motion for a new trial on the ground that he had abandoned his role as an independent weigher of the evidence. The defendant bases this contention on the fact that in revoking bail after the return of the guilty verdicts, the trial justice stated that the defendant's presumption of innocence had disappeared. We find no merit to this contention. Taken in the context in which it was made, the trial justice's statement meant only that the return of the guilty verdicts constituted a change of circumstances sufficient to war-

1. The defendant also argues that the state failed to prove that he was the proximate cause of the victim's death. However, defendant failed to raise this issue in arguing his motion for judgment of acquittal. The defendant therefore has waived consideration of this issue on appeal in light of the absence of a claimed deprivation of a basic constitutional right and a showing that such deprivation constitutes more

rant revocation of bail.[2] The trial justice expressly stated that, in revoking bail, he was not weighing the evidence, assessing the credibility of witnesses or in any way determining the defendant's guilt. Furthermore, the defendant has failed to point to anything in the record to show that the trial justice exhibited bias or failed to exercise his own independent judgment in ruling on the motion for a new trial. We therefore find that the trial justice's refusal to disqualify himself from ruling on the motion for a new trial was not error.

The defendant's appeal is denied and dismissed, and the judgments of conviction are affirmed.

than harmless error. *See State v. McGehearty*, R.I., 394 A.2d 1348 (1978).

**2.** Moreover, we have previously stated that when a guilty verdict is returned by the jury, the defendant is no longer presumed to be innocent. *State v. Walsh*, 113 R.I. 118, 318 A.2d 463 (1974); *Quattrocchi v. Langlois*, 100 R.I. 741, 219 A.2d 570 (1966).