**STATE**

v.

**Daniel L. CLOUTIER.**

**No. 89–475–C.A.**

Supreme Court of Rhode Island.

Jan. 18, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

FAY, Chief Justice.

This case is before the Supreme Court on appeal by the defendant from a Superior Court jury conviction of reckless driving resulting in the deaths of two eleven-year-old boys. The defendant claims that the trial justice committed error by (1) admitting evidence of an irrelevant speed limit and denying the defendant's motion to pass based on the admission of that evidence in the absence of an effective cautionary instruction and (2) refusing to permit evidence of the high incidence of use of the breakdown lane in the area of the accident. We reverse the judgment of the Superior Court in regard to the admissibility of the speed limit and need not, therefore, reach the other issues.

The facts relevant to this appeal are as follows. On the evening of May 7, 1987, several hundred Warwick residents attended a concert held at the auditorium at the Warwick Veterans High School. Among those present were defendant, Daniel Cloutier, and the victims, Kenneth Bernard and Christopher Kelley. The concert ended at 8:30 p.m., at which time the patrons of and the participants in the concert began to exit from the auditorium and to return to their cars. Testimony elicited at trial revealed that most of the concert goers parked either in the high school parking lot to the west of the building or in the medical-center parking lot located across West Shore Road.

The defendant attended and subsequently left the concert with his friend Susan Fleetwood and her two daughters. Upon leaving the auditorium, defendant and Fleetwood returned to their cars, which were located in adjacent spots in the high school parking lot. Fleetwood left the lot prior to defendant, taking a left-hand turn and heading easterly on West Shore Road.

The defendant apparently drove his car across West Shore Road and proceeded in an easterly direction, traveling in the breakdown lane. At trial repeated testimony revealed that West Shore Road, particularly the eastbound lane, was heavily congested as a result of the concert traffic.

Robert Kelley left the auditorium with his sons, Christopher and Michael, and Christopher's friend Kenneth Bernard and headed toward his car, which was located in the medical-center parking lot across West Shore Road. Kelley testified that he avoided the crosswalk on the west side of the entrance to the school because it was dark. Instead, Kelley stated, he chose to cross at the corner of Custer Street, reasoning that because there was a floodlight located on a pole at the corner, it was a safer area to cross. The Kelleys were apparently the only group to cross West Shore Road at this location. As the Kelley group waited on or near the center line of West Shore Road, a Bronco II traveling in the eastbound lane came to a gradual stop, allowing the group to cross. The driver, Leslie LaPlante, testified that after she had stopped her vehicle, she heard the sound of a loud muffler approaching from behind and to the right of her vehicle. She further stated that because the volume of the muffler rose so quickly, she believed the car to be accelerating. As the vehicle traveled on and passed her on the right, she caught a glimpse of a white car with a black top. She then testified that she blew her horn and closed her eyes. At this time Kelley and the three children were proceeding in front of the Bronco. Kelley testified that he suddenly saw a car coming quickly down the eastbound breakdown lane, whereupon he pushed his son Michael out of the way: the car struck Kelley in the upper-right thigh, as well as striking both Christopher and Kenneth. It was conceded at trial that defendant had been driving a white Camaro with a black top and that the boys died as a proximate result of the collision involving defendant.

Witnesses' testimony estimated that defendant's car had been traveling at approximately thirty to thirty-five miles an hour. Additionally there were no allegations of alcohol or drug use. The sole issue at trial, therefore, was whether defendant's actions could support a finding of criminal recklessness.

This court has previously established the inquiry necessary to render a finding of criminal recklessness. *State v. Watkins*, 448 A.2d 1260, 1267 (R.I.1982).

"Conviction under the reckless driving statute requires evidence that the defendant has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his action. * * * [T]he fact that a defendant drove at an excessive speed does not necessarily establish reckless driving. * * * Recklessness must be related to the time, place, persons, and circumstances surrounding them. * * * Thus, excessive speed under some circumstances may be mere negligence but under other circumstances may constitute recklessness." *Id.* (citing *State v. Dionne*, 442 A.2d 876, 883 (R.I.1982); *State v. Lunt*, 106 R.I. 379, 382–83, 260 A.2d 149, 151–52 (1969)).

Our language in *Watkins* does, in effect, promulgate a totality-of-the-circumstances analysis. Nowhere in *Watkins* do we state, however, nor can it be implied, that that analysis should include an examination of irrelevant circumstances. An interpretation to the contrary would lead to a perversion of fundamental rules of evidence. *See* R.I. R. Evid. 401 and 402.

In the case at bar the prosecution successfully introduced evidence of the existence of a twenty-mile-an-hour school-zone-speed-limit sign posted in the area of the accident. Further testimony revealed, however, that the twenty-mile-an-hour speed limit applied only to a period one-half hour before the start of school until one-half hour after the close of school. The incident in question took place at approximately 8:30 p.m. It would seem clear, therefore, that the twenty-mile-an-hour speed-limit sign was wholly irrelevant to the facts of this case. As such it was improperly admitted as evidence. *See* R.I. R. Evid. 402.

The *Watkins* analysis clearly established that the particular facts of each case are vital to a determination of recklessness. The speed of the vehicle as it pertains to the surrounding conditions is one of the primary areas of focus. We therefore conclude that the admitting of an irrelevant speed limit was so prejudicial that no cautionary instruction, however worded, could have cured the prejudice created in the minds of the jurors.

Accordingly the defendant's appeal is sustained and the judgment of the Superior Court vacated. The case is therefore remanded to the Superior Court for a new trial.

MURRAY and SHEA, JJ., dissenting.

MURRAY, Justice, dissenting.

Although the majority finds evidence of the speed-limit sign irrelevant and its admittance prejudicial, upon an examination of the entire record I do not agree that this finding requires reversal.

A determination of recklessness requires an assay of the totality of the circumstances:

> "Conviction under the reckless-driving statute requires evidence that the defendant has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his action. * * * The conduct must have constituted more than mere error in judgment by the driver and more than the negligence necessary to support a civil action for damages. * * * Moreover, the fact that a defendant drove at an excessive speed does not necessarily establish reckless driving. * * * Recklessness must be related to the time, place, persons, and circumstances surrounding them. * * * Thus, excessive speed under some circumstances may be mere negligence but under other circumstances may constitute recklessness." *State v. Watkins*, 448 A.2d 1260, 1267 (R.I.1982).

I am aware that the majority cites the above passage in support of its argument, but it is the genius of the law that enables me to cite the very same passage in support of my own conclusion.

The majority concludes that because the accident did not occur during school hours, the speed-limit sign was wholly irrelevant. I believe that the speed at which defendant was driving was not an irrelevant circumstance. At trial one witness testified that as she stopped to let the victims cross, she heard a loud muffler approaching from behind on her right. From the increasing volume and pitch, she determined that the car was accelerating. Other witnesses estimated that defendant's speed was between thirty and thirty-five miles an hour. While I concede that the twenty-mile-per-hour speed limit was not in effect at the time, I find that defendant's conduct was reckless under the totality of the circumstances analysis, regardless of the speed and regardless of whether the accident occurred during daytime or at night.

In *State v. Watkins*, 448 A.2d at 1266, we cited with approval the trial justice's instructions on recklessness:

> "Among the elements you may consider in connection with determining whether or not a defendant's conduct was violative of the statute, are weather conditions, road conditions, drinking by a driver, speed of a vehicle, *and any other factors which you determine bear upon the question of reckless operation.*" (Emphasis added.)

In our present case defendant was familiar with the area in which he was driving, he knew that many people had just left the concert, and he made a conscious choice to bypass the traffic by driving in the breakdown lane, in contravention of G.L.1956 (1982 Reenactment) § 31–15–16. Once defendant made a conscious choice to drive in the breakdown lane, he embarked on an illegal journey. Regardless of the applicable speed limit, a reasonable jury could infer from defendant's conduct that he was acting without regard for the safety of others and with knowledge that his actions were creating an unreasonable risk of harm. That is our accepted standard for recklessness, and that is what the jury found in this case.

Furthermore I conclude that the trial justice's instructions were not so vague and confusing as to require reversal. The trial justice gave a cautionary instruction each time the defense objected to the admission of testimony on the twenty-mile-per-hour speed limit. The three instructions were sufficient to dispel any inappropriate influence of the stricken evidence. The instructions read as follows:

"Ladies and gentlemen, as I repeatedly told you, you are the finders of fact in this case. I have no responsibility as to the fact finding process. I merely decide on questions of law, but you have heard two sets of speed limits. You have heard when one is applicable and when one is not applicable. You have heard that this incident happened at the time that it happened, at the time of day it happened. You decide the factual situation, but do not get confused about conflicting speed limits. There is one speed limit at a certain time and another speed limit at another time of day. I trust your good judgment and your common sense to separate the wheat from the shaft [sic] on this as far as that is concerned.
" * * *

"Ladies and gentlemen, you once again are the sole judges of the facts. You decide what is a reasonable and prudent speed under all the circumstances and I will instruct you so at the end of the case, but as far as what the speed limit was between 8 o'clock in the morning and 3 o'clock in the afternoon, I ask you to strike that and disregard it. It has no bearing on this case. Reasonable speed has a bearing on this case and that's for you to decide what reasonable speed is. But the fact that there was a a [sic] school zone at 20 miles an hour and the fact that that speed limit should be observed a half hour before school starts and a half hour after school starts. We now know that school starts at approximately 8 o'clock or 8:30 in the morning and they leave at 2:30 in the afternoon. So, from 8 to 3 that's the applicable speed limit at the time. So, I ask you to disregard that. It might come in later in

another person's testimony and we will cross that bridge when we come to it, but as far as now it really is not applicable to this case, but you decide what reasonable speed under all the circumstances is at the end of all the evidence.
" * * *

"Ladies and gentlemen, when we refer to school zones, the statute is quite clear about the time that these zones are applicable. I will tell you at the end of the case what they are, but I will tell you briefly that it is a half hour before sunrise and a half hour after sunset. Whatever speed limit at a school zone is not applicable in this case unless you find what a reasonable speed should be. That's your function to find out what a reasonable speed under all the circumstances and all the conditions. Speed is not, in and by itself, recklessness, but it can under certain circumstances as you find the facts to be."

In his final charge to the jury the trial justice quoted the passage from *State v. Watkins* that both the majority and I find persuasive. The remainder of his instructions were virtually identical to those given and approved in *Watkins. See Watkins,* 448 A.2d at 1265–66 (instructions cited in full).

It is a well-settled rule that the validity of an instruction is determined by analyzing its effect in context with the entire charge to determine if it is misleading or confusing. *State v. Harris,* 106 R.I. 643, 649–50, 262 A.2d 374, 377–78 (1970). Furthermore, the instructions must be evaluated "in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them." *Hueston v. Narragansett Tennis Club, Inc.,* 502 A.2d 827, 829 (R.I.1986). In reading the trial justice's instructions, I do not find them misleading or confusing. Taking them together, I find it "quite clear that the court's intention was to adequately inform the jury as to the limitations under which that evidence was admitted. [I] cannot agree that the charge, when read in this fashion, would tend to mislead and confuse reasonable men treating the words

in their ordinary, natural meaning." *Harris*, 106 R.I. at 650, 262 A.2d at 378.

For the foregoing reasons I respectfully dissent.

SHEA, J., joins in this dissent.