[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiff, Thom Serrani, seeks a declaratory judgment (1) determining that the defendant Board of Ethics of the City of Stamford lacks jurisdiction over the plaintiff because his service as Mayor of the City of Stamford expired on November 30, 1991; (2) determining that Section 15 of the City of Stamford Code of Ethics is illegal to the extent that it purports to authorize the Board of Ethics continued jurisdiction over former employees or officers of the City of Stamford; and (3) declaring null and void the action of the defendant Board taken on February 29, 1992, which purports to continue its jurisdiction over the plaintiff.
In support of the requested declaratory relief, the plaintiff now seeks the issuance of a temporary injunction to restrain the Board of Ethics from continuing its investigation CT Page 2946 of the plaintiff pending a permanent injunction to effect compliance with the declaratory judgment and to prevent the Board of Ethics from continuing its investigation of the plaintiff.
Plaintiff had served as mayor of the City of Stamford from December 1, 1983 through November 30, 1991, when his final term expired.
The defendant Board of Ethics of the City of Stamford, is an independent investigative entity first established by Ordinance No. 445 Supplemental, adopted by the Board of Representatives of the City of Stamford in 1981. (Plaintiff's Exhibit B). That ordinance also established a Code of Ethics for all city officers and employees. On June 1, 1989, that ordinance was amended and superseded by the present Ordinance No. 640 Supplemental. (Plaintiff's Exhibit A).
The creation of the Board of Ethics was authorized byPublic Act No. 79-618, now codified as General Statutes Section 7-148h, which reads:
 Any town, city or borough may, by charter provision or ordinance, establish a board, commission, council, committee or other agency to investigate allegations of unethical conduct, corrupting influence or illegal activities levied against any municipal official, officer or employee. The provisions of subsections (a) through (e), inclusive, of section 1-82a shall apply to allegations before any such agency of such conduct, influence or activities, to an investigation of such allegations conducted prior to a probable cause finding, and to a finding of probable cause or no probable cause. Any such board, commission, council, committee or other agency established pursuant to this section may issue subpoenas or subpoenas duces tecum, enforceable upon application to the superior court, to compel the attendance of persons at hearings and the production of books, documents, records and other papers.
The Board of Ethics is authorized to render advisory opinions concerning officers and employees of the City of Stamford with respect to the Code of Ethics as well as to create and maintain an ethics handbook for distribution to all officers and employees.
It is also authorized to conduct investigations into complaints alleging violations of the Code of Ethics by an officer or employee or any person who was an officer or employee CT Page 2947 within the preceding year (Code Section 13.C.2.a) As directed by General Statutes Sec. 1-82a, the investigation and any hearings in pursuit of the investigation is confidential and closed to the public while the Board ascertains whether or not there is probable cause to believe that a violation of the Code of Ethics has occurred.
If the board ascertains there is probable cause to believe a violation of the code of Ethics has occurred, then it is directed to hold public hearings. The present ordinance, in Section 13.c.2.b, provides that:
 Any public hearing shall be conducted under the Board's rules and regulations, which shall include the following: Oral evidence shall be taken under oath; the complainant and respondent shall have the right; 1) to be represented by counsel, 2) to present evidence, 3) to examine and cross-examine witnesses, and 4) to have mailed to them by registered and certified mail copies of the Memorandum of Decision by the Board within thirty (30) days after the conclusions of hearings on said complaint.
While the Board has no disciplinary authority, it is directed to file its decision with "the Mayor, Town and City Clerk, Corporation Counsel, governing body or other public office of an agency, as it deems appropriate. Violations of the Code of Ethics would be considered a basis for initiating impeachment or removal from office, or demotion or discharge by the appropriate disciplinary authority. (Code, Section 14.A.)
Under the 1989 Ordinance No. 640 Supplemental, the following section, which did not appear in the original ordinance, was adopted
Section 15. JURISDICTION
 If an officer or employee under investigation leaves office, or employment, the Board by majority vote shall have the power to continue the investigation. In response to a complaint made in December, 1990,
(Plaintiff's Exhibit E) that the plaintiff, Thom Serrani, while Mayor of the City of Stamford, engaged in transactions that constituted violations of the Code of Ethics, the Board of Ethics initiated an investigation into the allegations. On April 1, 1991, the Board found probable cause that the mayor had violated the Code of Ethics. (Plaintiff's Exhibit F).
The board initiated a series of public hearings beginning CT Page 2948 on April 26, 1991 to determine if the plaintiff and other respondents had committed violations of the Code of Ethics as public officials of the City of Stamford. Through November 7, 1991, the Board held over 40 such hearings.
Between November 7, 1991 through February 29, 1992, the Board held no further public hearings. On February 29, 1992, the Board, under the authority of Section 15 of the present Ordinance, voted to continue its jurisdiction over the plaintiff even though he is no longer an officer or employee of the City of Stamford.
It is the validity of the Board's action and the enforceability of Section 15 of the Code of Ethics which is at issue in this case.
To establish an equitable claim of irreparable injury the plaintiff presented evidence that the defendant Board of Ethics conducted in excess of 40 public hearings from April 26, 1991 through November 7, 1991. At each public hearing the defendant called all the witnesses, conducted all examinations and controlled all cross-examination, frequently sustaining its own members's objection and overruling those asserted on behalf of the respondents. As a result the scope, content and duration of the hearings were controlled solely by the defendant.
The plaintiff cooperated fully with the Board and tried to induce the Board to complete its investigation and issue its decision before the end of his term as mayor. Nonetheless, at the conclusion of the November 7th meeting, the defendant Board still had not completed the presentation of all its witnesses and material. As a result each of the respondents has not yet been afforded an opportunity to present a defense.
After his term as mayor expired on November 30, 1991, the plaintiff commenced business as a self employed consultant. The plaintiff complains that through the course of the hearings he was exposed to enormous adverse publicity which undermined his ability to serve as mayor and which destroyed his ability to seek re-election in November. He also complains that the effort to continue jurisdiction over him as a private citizen and the continued publicity is adversely affecting his ability to conduct his private business.
Based on the evidence presented at the hearing, the court must conclude that the plaintiff has not obstructed the Board from coming to a prompt decision and has not otherwise contributed to any delay.
However, this application for a temporary injunction has CT Page 2949 not been framed on any issue of inequitable procedure, or lack of fundamental fairness and due process, or breach of its own rules by the Board; rather, the matter has been presented primarily as a legal issue, namely:
Is the action of the defendant Board in voting to continue its investigation of the plaintiff, even though he is now a private citizen and no longer an officer or employee of the City of Stamford, illegal? The plaintiff claims that action, as well as Section 15 of the Code of Ethics upon which its is based exceeds the permissible scope of the enabling legislation, General Statutes Section 7-148h.
 II.
The plaintiff contends that the necessary starting point in determining that the Board of Ethics lacks the power to investigate former officials or employees is the enabling legislation, General Statutes Section 7-148h. The enabling legislation empowers a municipal Board of Ethics to investigate ". . . any municipal official, officer or employee." The plaintiff contends that the language employed by the legislature is clear and unambiguous. It applies to a person who is a municipal official, officer or employee and does not even suggest the authority to investigate a former municipal official, officer or employee.
This court understands the plaintiff's position to be that since the enabling statute addresses only present municipal officials, officers or employees, the enabling statute cannot be read to include former municipal officials, officers or employees merely because it has not excluded them.
The plaintiff asserts that the only powers a municipal corporation has are those which are expressly granted to it by the state. Pepin v. Danbury, 171 Conn. 74, 83, 368 A.2d 88
(1976). In the absence of an express grant of power from the state, municipalities do not have the power to legislate. Bottone v. Town of Westport, 209 Conn. 652, 553 A.2d 576 (1989).
Delegation of authority to municipalities is narrowly construed and in determining whether a municipality has certain authority, the court does not search for a statutory prohibition against the exercise of such authority but, rather, for a specific statutory grant of authority. Simons v. Canty,195 Conn. 524, 448 A.2d 1267 (1985).
"The legislature has been very specific in enumerating those powers it grants to municipalities. See General Statutes Title 7." Buonocore v. Branford, 192 Conn. 399, 403, CT Page 2950471 A.2d 961 (1984).
The plaintiff notes that when the City of Stamford established its Board of Ethics pursuant to the enabling legislation provided by General Statutes Section 7-148h, by passing Ordinance No. 445 Supplemental in 1981, it did not confer upon the Board authority to investigate former officials or employees. It was not until May 1, 1989, when Ordinance No. 445 Supplemental was amended by Ordinance No. 640 Supplemental that the Board of representatives of the City of Stamford purported to confer upon the Board of Ethics what the plaintiff holds to be the illegal authority to investigate former officials and employees upon a majority vote of the Board's members.
In support of his contention, the plaintiff cites Stern v. Connecticut Medical Examining Board, 208 Conn. 492,545 A.2d 1080 (1988), wherein the Connecticut Supreme Court held that the state medical examining board lacked jurisdiction to revoke a physician's license to practice medicine because of alleged misconduct when the license had expired by lapse of time.
The plaintiff also cites Doe v. State Ethics Commission,53 Haw. 373, 494 P.2d 559 (1972). In that case, the plaintiffs were former employees of the State of Hawaii. While investigations relating to charges of violation of the code of ethics were being conducted, both employees resigned. Many months later, the commission served an amended charge on the plaintiff, John Doe, who was running for governor at the time. The Court enjoined the Ethics commission from proceeding on the grounds that the plaintiffs were no longer in the employ of the State. The Supreme court of Hawaii, affirmed the trial court's injunction, stating that no justification for continued action existed.
 "The power of the Ethics Commission to publish decisions educating public employees as to what conduct is considered ethical is not sufficient to warrant intrusion into the private life of a former employee, regardless of the fact that the charges were filed while the employee was still in government service. The commission's almost unlimited power to accuse, prosecute, and judge, and its discretion on when to charge an employee, when to start an investigation, and when to give an employee a hearing are consistent with a serious danger of abuse."
Doe v. State Ethics Commission, supra, at 375.
III. CT Page 2951
The defendant Board contends the fact that the plaintiff's term of office expired while the Board's investigation was still pending does not invalidate the Board's investigations under C.G.S. Section 7-148h. The statute authorizes the investigation of an officer's activities and does not preclude the continuation of an investigation of an official who resigns or leaves office. For the court to infer such a preclusion would result in an interference with the goal of the legislation.
The Board maintains that if the purpose of the statute is to provide towns with the authority to investigate official corruption, the plaintiff's proposed limitation on C.G.S. Sec.7-148h would have the opposite effect. The Board's function under C.G.S. Sec. 7-148h and the Code of Ethics would be meaningless if its investigations were terminated every time a public official resigned or left office. The Board investigates the acts of public officials committed during their tenure; the fact that these officials may later become private citizens does not affect their past public activities.
A resolution of such an investigation serves the public interest by informing the public when a government official has been derelict in his or her duties towards that public.
As an advisory Board that makes recommendations on the content of the Code of Ethics, a completion of an investigation allows the Board to determine the effectiveness of the Code and the existence of violations of the public trust which need to be addressed by the Code.
The Board claims the interpretation the plaintiff seeks has no basis in law or reason. Jurisdiction, once acquired, is not lost or diverted by subsequent events. State v. One 1976 Chevrolet Van, 19 Conn. App. 195, 562 A.2d 62 (1989).
The defendant sees the Connecticut case of Stern v. Connecticut Medical Examining Board, 208 Conn. 492,545 A.2d 1080 (1988) as being completely distinguishable. The facts in Stern involved an investigation of a physician initiated after the physician's license had already expired. The only relief sought by the investigating agency (the department of health services) which served as "the prosecuting authority on physician disciplinary cases," was revocation of the former physician's license. Stern, at 495. In concluding that the department had no jurisdiction to investigate the respondent, the court stressed that "[c]entral to our conclusion is the narrow scope of the department's prayer for relief, which requested only the revocation of the plaintiff's license." Stern, at 501. It stated: CT Page 2952
 Having committed itself to seeking only a license revocation, the department disabled itself from invoking other sanctions theoretically authorized by Section 19a-17 as a basis for board jurisdiction.
Stern, supra, at 502.
Because the Board of Ethics' investigation was initiated against the plaintiff when he was still a public official, the Board certainly had explicit jurisdiction at the outset to conduct its inquiry.
As the defendant notes, in Stern the Supreme Court acknowledged that its holding is similar to the holdings of courts in other states where complaints against judges have been dismissed because the officials no longer held office "when formal proceedings are initiated." Stern, supra, at 502-03.
On the other hand, the defendant points this court to a leading case involving an investigation of judicial misconduct, where jurisdiction was held to be continuing where the investigation was initiated while the official was still in office — In Re Peoples, 196 N.C. 109, 250 S.E.2d 890 (1978). There, a former judge argued that his resignation as a District Court Judge deprived the Judicial Standards Commission of jurisdiction to continue its investigation of him as of the date of his resignation and rendered the question of his removal moot.
The commission had begun its investigation of the judge while he was still presiding in his official capacity, but during the investigation, he had resigned. The judge argued that because the enabling statute, which read that upon recommendation by the Commission, the Supreme Court can remove any "justice or judge" for willful misconduct, the jurisdiction of the commission was delimited to investigating only current members of the bench and not former members.
The court did not agree. It articulated the principle of jurisdiction that "the jurisdiction of a court depends upon the state of affairs existing at the time it is invoked." In Re Peoples, supra, at 910. Applying this principle to administrative agencies, the court noted that because the Commission had initial jurisdiction of the respondent at the time it initiated its complaint against him, the subsequent resignation of the respondent did not deprive the Commission of jurisdiction. It explained:
Once the jurisdiction of a court or administrative CT Page 2953 agency attached the general rule is that it will not be ousted by subsequent events . . . even when the events are of such nature that they would have prevented jurisdiction from attaching in the first instance.
Id. at 911. This appears in accord with the rule in Connecticut. See, also, State v. One 1976 Chevrolet Van,19 Conn. App. 195, 199, 562 A.2d 62 (1989).
In considering the question of mootness, the Peoples court reviewed other jurisdictions and found that a proceeding to remove an official from public office is rendered moot with the official's resignation `if the only purpose of the proceeding is to vacate the office." Id. at 912. Because the statute involved in In Re Peoples provided for other sanctions against a judge for engaging in misconduct including disqualification from future judicial office and loss of retirement benefits, respondent's resignation did not render the investigation moot. Id, at 914. In support of this holding, the court explained that if the investigation were not allowed to proceed, it would allow a public official to avoid the consequences of his actions any time he was subjected to an investigation. This result would "emasculate the statute and thwart the legislative intent entirely" and "create an absurd consequence," in violation of the rules of statutory construction Id, at 914.
This court notes that the Board of Ethics has no disciplinary power except to produce a memorandum of decision upon which other officials or agencies might consider any disciplinary action. Beside the impeachment, removal from office, demotion or discharge authorized as a consequence of a violation of the Code of Ethics under Section 14 of the Code, that section also provides:
 B. The effect of a violation of this Code on the validity of a decision or action in connection with which the violation occurred shall be determined by general principles of law.
The case Doe v. State Ethics Commission, 53 Haw. 373,494 P.2d 559 (1972) involved an investigation by a State Ethics Commission empowered to prosecute those public officials whom it investigated. The primary purpose of the enabling statutes was, the majority held, to "remove dishonest individuals from positions of public trust and confidence." The court held that since "once a public employee has withdrawn from public service . . . the object of Chapter 84 is accomplished," and there is no need for a continued investigation. Doe v. State Ethics Commission 53 Haw. 373, 494 P.2d 559 (1972) CT Page 2954
Doe is distinguishable from the present case primarily because the majority of the court held the purpose of the statute was to remove ethical violators from office, although the dissent saw a much broader function.
Moreover, the Hawaii majority found that the claim of political motivation was not entirely frivolous, citing the appellees claim that "[T]he original charge was made in March, 1969, and no action was thereafter taken long after the individual's termination of public service which occurred in January, 1970. The amended charge of September 14, 1970, served on John Doe on September 15, 1970, coincidentally occurred during the heat of a contested gubernatorial election. One of the most serious charges was that of conflict of interest of the Administration. Was such amended charge based on political or publicity reasons and desire to continue proceedings?"
These factors, verging on an implication of abuse of power and due process violations, are not present here and the Doe case is really limited to its facts.
 IV.
The court is persuaded that the enabling statute, C.G.S.7-148h delineates the persons — "any municipal official, officer or employee" — whose activities would be subject to investigation by a Board of Ethics, but does not limit the time of the investigation to the period of actual service in office.
The State Code which defines "official" and "employee" in the same way as the Stamford Code defines these terms prohibits certain conduct and allows investigations of former officials and employees. See, for example, C.G.S. Section 1-84b. The Stamford Code similarly prohibits certain conduct by former officers and employees (Code Section 12) and allows investigations of former officials and employees (Code Section 13. C. 2. a.). If these codes authorize the investigation of former officials and employees, all the more reasonable is it, that an investigation begun while the official is in office may continue even after he leaves office.
While it is reasonable to determine that an investigation looking to possible revocation of a license or removal from office becomes moot if the subject of the investigation is no longer licensed to practice or no longer holds office, the same rationale does not apply when, unlike the agencies in Doe and Stern, the Board of Ethics is not investigating the plaintiff in order to remove him from office.
As the defendant asserts an investigation by the Board CT Page 2955 serves the function of educating the public, deterring future corruption, providing changes in ethical standards, and ensuring that a proper record exists of its investigation so that if a violation is established the City of Stamford may take appropriate action, if it desires to do so.
This court must agree that the Board's function under C.G.S. Sec. 7-148h and the Code of Ethics would be meaningless if its investigations were terminated every time a public official resigned or left office.
The court is mindful that the plaintiff claims injury on the basis that "he has . . . been subjected to widespread adverse publicity which is injurious to his business and professional reputation causing him irreparable harm and damage." The undue protraction of the Board's investigation without resolution may at some time give rise to deprivation of due process claims.
However, on the issue as presently before this court, the court finds, as a matter of law, that the plaintiff is not likely to secure a declaratory judgment that the Board of Ethics lacks jurisdiction over the plaintiff because he is no longer an official of the City of Stamford; and is unlikely to secure a determination that Section 15 of the Stamford code of Ethics is illegal to the extent it purports to authorize continued jurisdiction over former officers and employees of the City of Stamford; and is unlikely to have the action of the defendant Board taken on February 29, 1992, voting to continue its investigation of the plaintiff declared null and void.
The plaintiff's application for a temporary injunction is denied.
NIGRO, JUDGE